DANIEL FIRESTONE v. WALTER J. RICE AND FRANK FENN.

*Arrest—Felony—Misdemeanor—False imprisonment—Assault and battery—Probable cause—Handcuffing prisoner —Assisting an officer.*

1. A person who responds to the call of a *known* officer to assist in making an arrest is protected by the *call*, and must necessarily be by the *law*, against suits for trespass and false imprisonment, if in his acts he confines himself to the order and direction of the officer.

2. Whenever the statute punishes an offense by imprisonment in the State prison, unless it is expressly declared by the statute to be a misdemeanor, such offense must be considered and treated as a felony, as regards the right of an officer to arrest without process.

3. In this case it is held that the question of probable cause for the arrest complained of was fairly submitted to the jury, and that from the undisputed facts (see opinion) the sheriff was justified in arresting the plaintiff.

4. There must be some discretion reposed in a sheriff or other officer, making an arrest for felony, as to the means taken to apprehend the supposed offender, and to keep him safe and secure after such apprehension; which discretion cannot be passed upon by a court or jury unless it has been abused through malice or wantonness, or a reckless indifference to the common dictates of humanity.

5. In order to justify a sheriff in handcuffing a prisoner arrested for felony, it is not necessary that he should be unruly, or attempt to escape, or to do anything indicating a necessity for such restraint, nor, in the absence of these indications, that he should be a *notoriously* bad character.

6. The sheriff making an arrest for felony cannot stop, when the man is unknown to him, at the moment of arrest, to inquire into his character, or his intentions as to escape, or his guilt or innocence of the offense charged against him. The officer's duty is to take and safely keep him, and bring him before a magistrate, and, if he does this without wantonness or malice, it is not for the jury to find that his precautions were useless and unnecessary in the light of after-acquired knowledge of the true character and intent of the accused, and to punish such officer in damages for doing what honestly appeared to him at the time to be reasonable and right.

Error to Allegan. (Arnold, J.) Argued June 29, 1888. Decided July 11, 1888.

Action for false imprisonment and assault and battery for making an arrest without process. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Padgham & Padgham,* for appellant.

*C. R. Wilkes,* for defendants.

[The points of counsel are fully stated in the opinion. REPORTER.]

MORSE, J.   This suit was brought to recover damages for false imprisonment and assault and battery upon the plaintiff, alleged to have taken place on the night of August 6, 1885.   Rice, at the time, was sheriff of Allegan county, and Fenn was night-watch of the village of Allegan.   The arrest occurred in the township of Monterey, in that county.   Upon the trial it appeared that Fenn was requested by the sheriff to aid him in the arrest, and did nothing except as ordered by the sheriff. The chief indignity complained of was the handcuffing of plaintiff.   Fenn put the handcuffs upon him by direction of the sheriff, who had in his charge at the time one Zeigler, who was arrested at the same time and place as the plaintiff.

The court instructed the jury that if Fenn knew that Rice was sheriff, and acted in obedience to his orders, and only upon his orders, in what he did touching the arrest, he would be justified in so doing, even though the acts of Rice were without authority, and their verdict, as to Fenn, should be no cause of action.

"Under the laws of this State, a private citizen is bound, upon the order of the sheriff, to assist in the arrest, and he is not authorized to wait to ascertain the authority of the officer before acting ; and unless his act in itself is in some way wanton, and beyond what he is required to do, and thereby a trespass is committed, he will not be liable, and for that reason I give you this request."

The jury rendered a verdict in favor of both defendants.

The plaintiff alleges error in the charge of the court as above given.   There was no error in this direction.   It is admitted that Fenn did nothing in wantonness or in

malice. He went to the house of Zeigler, where the arrest was made, at the request of the sheriff, and while there, under his direction, placed handcuffs upon plaintiff, and rode beside him in a buggy to Allegan. The court would have been warranted in directing a verdict in Fenn's favor.

The sheriff is authorized to call upon citizens to aid him in apprehending or securing any person for felony or breach of the peace (How. Stat. § 591); and, if any person so required to assist the sheriff neglect or refuse to do so, he is liable to punishment by fine or imprisonment (How. Stat. § 9250).

We do not think that a man called upon by the sheriff is required, at his peril, to ascertain whether the sheriff has a proper warrant, or whether the offense charged against the person to be arrested is a felony, or that he may refuse to act until he is satisfied that the sheriff is acting legally, or within the scope of his office, in a criminal case. If he were allowed to do this, the object of the law would be defeated, and the statute rendered nugatory in many cases. There is often no time for inquiry, as action must be immediate. The necessity of the case will not permit the person thus summoned to stop to examine papers, or take counsel as to the legality of the process in the officer's hands, or to inquire whether any process is necessary in the particular case where his aid is required.

Therefore the person who responds to the call of one whom he knows to be an officer is protected by the call from being sued for rendering the requisite assistance. The officer may not be acting legally, and therefore a trespasser; but the person assisting him, at his request or command, and who relies upon his official character and call, is protected by the law, and must necessarily be, against suits for trespass and false imprisonment, if in

his acts he confines himself to the order and direction of the sheriff. *McMahan v. Green,* 34 Vt. 69; *Reed v. Rice,* 2 J. J. Marsh. 44.

The plaintiff and Zeigler were arrested for the commission of a statutory offense, under section 9168, How. Stat., which reads as follows:

"Every person who shall willfully and maliciously break down, injure, remove, or destroy any dam, reservoir, canal, or trench, or any gate, flume, flash-boards, or other appurtenances thereof, or any levee or structure for the purpose of conveying water to any such dam or reservoir, or any of the wheels, mill-gear, or machinery of any mill, or shall willfully or wantonly, without color of right, draw off the water contained in any mill-pond, reservoir, canal, or trench, shall be punished by imprisonment in the State prison not more than five years, or by fine not exceeding five hundred dollars and imprisonment in the county jail not more than one year."

The sheriff had a warrant against Zeigler, but none against the plaintiff.

It is claimed by the counsel for the plaintiff that this statutory crime is not a felony, but a misdemeanor, and the circuit judge was requested to so instruct the jury, and to further direct them that, therefore, the arrest of plaintiff was unwarranted and illegal, as no lawful arrest could be made without process. The court refused to comply with this request, and charged the jury that the offense was a felony under the laws of this State. Under the statute and the previous decisions of this Court, we think that whenever a statute punishes an offense by imprisonment in the State prison, unless it is expressly declared by the statute to be a misdemeanor, such offense must be considered and treated as a felony, as regards the right of an officer to arrest without process. See How. Stat. § 9430; *People v. Brigham,* 2 Mich. 550; *Shannon v. People,* 5 Id. 71; *People v. Bristol,* 23 Id. 118; *People v. Sweeney,* 55 Id. 589 (22 N. W. Rep. 50); *Drennan v.*

*People,* 10 Id. 169; *People v. Donald,* 48 Id. 493 (12 N. W. Rep. 669).

The counsel for the plaintiff also claim that the sheriff, under the circumstances, had no right to handcuff the prisoners; that the same was an unnecessary indignity and an outrage; and that the plaintiff, by reason of riding handcuffed in a buggy for several miles over a rough and jolting road in the night-time, received injuries to his health and person, from which he suffered for a long space of time. And they complain of the charge of the court in this respect.

The court was requested to direct the jury as follows:

"If you find, from the evidence in this case, that the defendants put handcuffs on the plaintiff, and compelled him to go a long distance with them on, and that plaintiff in no way attempted to escape when arrested, and offered no resistance at any time, then I charge you that defendants would be guilty of assault and battery on the plaintiff, and would be liable to him for such an amount in damages as, under all the circumstances of this case, the plaintiff ought to recover.

"When a person is arrested for the commission of a supposed crime, and is taken and held for trial or examination, as the case may be, the prisoner ought to be used with the utmost humanity, and at the time of arrest, and during his being taken to prison, should not be fettered or handcuffed, nor subjected to any other hardships than such as are absolutely necessary for the purpose of safe-keeping and confinement under the arrest ; and an officer is not justified in handcuffing a prisoner unless he is unruly, or attempts to escape, or is a notoriously bad character, or does something indicating a necessity on the part of the officer to restrain him by handcuffing.

"That the evidence in this case does not disclose any necessity for the handcuffing of the plaintiff, as it was done."

These requests were refused, and the court, in relation to this claim of the plaintiff, instructed the jury in the language following :

"Now, while an officer is bound to treat his prisoner with such kindness and humanity as may be consistent with security, and will not be warranted in employing any harsh- or unnecessary restraint, yet it is his duty to use such reasonable precautions as the case requires to prevent escape, especially in arrest for felony, or offenses of magnitude. His action, in this regard, is to be considered in the light of all the circumstances of the particular case bearing upon the question of what means are reasonably necessary to keep his prisoner secure.

"I do not think, gentlemen of the jury, in this case, under the undisputed circumstances surrounding this arrest, as shown by the evidence, you would be warranted in holding the defendant Rice liable for any damages in this action, solely upon the grounds that the handcuffs were placed upon the plaintiff by his direction, and kept there until the jail was reached, unless you find that this was ordered without any view to prevent the escape of the plaintiff, or keep him in safe custody.

"If it was a wanton act, and done without any view to secure the plaintiff or prevent his escape, the defendant Rice would be liable for the damages resulting from the placing and continuing of the handcuffs upon the plaintiff."

The question of probable cause for this arrest was properly submitted to the jury, and from the undisputed facts of the case we are of the opinion that the sheriff was justified in arresting the plaintiff. It was represented to the sheriff by one William Dumont and his brother John, who came to Allegan, and waked Rice up in the night, that the dam of the said John Dumont had been cut that night, and that the Dumont brothers had tracked two persons directly from the spot where the dam was opened to the house of John Zeigler. The Dumonts were old citizens of Allegan county, and there was no reason why the sheriff should doubt the truth of the representations made by them; and a warrant was procured by John Dumont against Zeigler, and also directed against another as an unknown person.

Upon reaching the house, they found Zeigler and Fire-

stone in bed. The wet boots of Zeigler and the shoes of plaintiff were found at the house, and measured by Dumont, who claimed that they corresponded exactly with the tracks. The pantaloons of both parties were wet around the bottom of the legs, and a spade was found inside the kitchen door, which appeared to have been recently used. The lower part of this spade was wet and clean, but upon the upper part of the blade sand was sticking, which Dumont informed Rice was in appearance like the sand of which his dam was constructed.

Firestone was the only male occupant of the house besides Zeigler, and there can be no reasonable claim made, under these circumstances, that the officer did not have probable cause for taking him into custody. Having reasonable cause for making the arrest, the question arises, was the officer justified in handcuffing the parties?

We think the rule laid down by the circuit judge a proper one. There must be some discretion reposed in a sheriff or other officer, making an arrest for felony, as to the means taken to apprehend the supposed offender, and to keep him safe and secure after such apprehension. And this discretion cannot be passed upon by a court or jury unless it has been abused through malice or wantonness or a reckless indifference to the common dictates of humanity. It must be found that the officer was unnecessarily rough and inhuman in his treatment of the person arrested, and without any view to prevent the escape of such person.

It is, not necessary, as claimed by the plaintiff's counsel, that the prisoner must be unruly, or attempt to escape, before he can be handcuffed, or do anything indicating a necessity for such restraint. Nor, in the event that he does nothing, at the time of the arrest, in the way of attempting to escape, or resisting the officer, is it necessary that he should be a *notoriously* bad character in

order to justify the tying of his hands. There may be other and sufficient reasons, as it seems to me there were in this case, why such extreme measures should be resorted to in order to secure and safely lodge the prisoner.

In this case there was evidence tending to show that the sheriff was informed that these men, Zeigler and Firestone, were "slippery" and desperate men. He did not know either of them personally, and had no information, save what he received from the Dumonts that evening, as to their reputation and character in the community; and he had no time to make inquiry.

The arrest was made in the night, at a late hour, under the supposition, if not made then, that the persons sought or at least the plaintiff, might escape apprehension altogether, or only be captured after much hunting and expense. The night was dark, and the country wooded. The parties had to be taken about 80 rods, along an old winding wood road, to the buggy, every foot of the way opening and inviting an opportunity to escape. From there to Allegan was a night drive, with two officers and two prisoners. There was no evidence of any harshness upon the part of the sheriff or Fenn other than the placing of the handcuffs upon Zeigler and plaintiff. The plaintiff made no complaint at the time

There is nowhere in the whole record a single instance tending to show malice or wantonness on the part of the sheriff. There is absolutely no evidence tending to show any ill will, or even a malevolent impulse, of the sheriff towards plaintiff or Zeigler.

It appears, from the testimony of the sheriff, that, upon the same day of this arrest, a prisoner had broken away from him in the day-time in the streets of Allegan, causing him some effort and trouble to recapture him.

It is plainly apparent that in this case the sheriff put

the handcuffs upon plaintiff for no other purpose than to prevent his escape, and that he had good reason to believe it was necessary to do so.    That it turned out afterwards that the plaintiff was innocent of any offense, was neither a "slippery" nor desperate character, but an inoffensive and reputable citizen, and that he never had the remotest idea of trying to escape, cannot alter the rule which saves the sheriff harmless from an act which appeared, at the time it was done, to be both necessary and reasonable.

The arrest of an innocent man is an indignity hard to be borne, and the tying of his hands with cords or irons is something that makes the blood run chill to contemplate; but both are indignities ofttimes without redress, and a necessary consequence of the due administration of justice in the suppression of crime.

An officer is bound to act humanely, and cannot lightly and without reason either arrest or harshly treat a supposed offender, be he innocent or guilty.    It is, no doubt, true that petty officers, too often unduly inflated by a too high conception of their office and authority, are inhuman and cruel in their treatment of suspected persons.    Such conduct the law does not hesitate to punish.    But to mulct the sheriff, under the circumstances of this case, in damages for handcuffing the plaintiff while conveying him, on a dark night, through the woods, to the village of Allegan, when he had good reason to suspect him to be guilty of a felony, and one likely to escape at the first opportunity, when it was done neither in recklessness, wantonness, nor malice, would be to put in peril every officer of the law who, under like circumstances, was alert and vigilant in the performance of his duties in the arrest of supposed criminals.

The hardened and skillful offender against the criminal laws is sometimes, and generally, the meekest when arrested, but his eye is open to every avenue of escape;

and to say that unless such person attempts to escape, resists arrest, or is known to the officer to be a *notoriously* bad character, he cannot be shackled for an hour or two, until he can be conveyed to a place of safety, is to lay down a rule which will make escapes easy, and place new obstacles in the way of the apprehension and safe-keeping of offenders. The sheriff cannot stop, when the man is unknown to him, at the moment of arrest, to inquire into his character, or his intentions as to escape, or his guilt or innocence of the offense charged against him. His duty is to take him, to safely keep him, and to bring his body before a magistrate. If he does this without wantonness or malice, it is not for a jury to find that his precautions were useless and unnecessary in the light of after-acquired knowledge of the true character and intent of the accused, and to punish the sheriff in damages for what honestly appeared to him at the time to be reasonable and right.

Several assignments of error are made to the ruling of the trial judge upon matters of evidence, but we find no merit in any of them.

The statements made to the sheriff by the Dumont brothers, both before and at the time of the arrest, were material and competent, bearing upon the question of probable cause for making the arrest, and also upon the reasonableness of the act of the sheriff as to the use of the handcuffs. It was also proper for the sheriff to testify that he believed such statements as bearing materially upon his good faith as to both of these matters.

We find no error in the record, and the judgment must be affirmed, with costs.

The other Justices concurred.