MOYER v. CORDELL.

No. 33848.   Feb. 13, 1951.
Rehearing Denied March 13, 1951.

*228 P. 2d 645.*

Billings & Billings, Woodward, and J. W. Burrow, Gage, for plaintiff in error.

Claude E. Love, Oklahoma City, and Emmett A. Klem, Shattuck, for defendant in error.

LUTTRELL, V.C.J. This is an action for damages, brought by the plaintiff, Ed Cordell, against the defendant Melvin Moyer, and others. The trial court overruled the demurrer of defendants to the evidence of plaintiff, denied their motions for directed verdict, and submitted the cause to the jury, which returned a verdict for plaintiff. The defendant Melvin Moyer alone appeals.

Plaintiff was the operator of a beer tavern in the city of Gage, and the action arose out of the closing of the tavern by the city marshal of Gage, who was one of the defendants in the action, and the arrest of plaintiff on May 4, 1947, while he was upon the premises with permission of the city marshal.

Plaintiff's petition is in four counts. In his first cause of action plaintiff alleges that defendant Moyer and others procured the city marshal to close his place of business, and that on May 4, 1947, as a part of the same and continuing aforementioned act of closing his place, Moyer maliciously and without proper cause procured the marshal to arrest plaintiff and put him in jail upon a groundless charge and without a warrant; that the marshal was not the legally constituted marshal in the city of Gage, but that they allowed him to hold himself out as such city marshal, and if he was the legally constituted marshal he was unfit to act as such. He further alleges that by reason of the closing of his business, causing his arrest, and falsely imprisoning him in jail he had been compelled to pay out a large sum of money for counsel fees and other expenses amounting to $400, and that the defendants were guilty of fraud, oppression, and malice, and asked for exemplary damages in the sum of $1,000.

In his second cause of action he alleged that the acts of defendants in closing his place of business, causing his unwarranted arrest, and falsely imprisoning him, had damaged the reputation and good will of his business to

his injury in the sum of $2,000. He also alleged fraud, oppression and malice on the part of defendant, and prayed for exemplary damages in the sum of $1,000.

In his third cause of action he alleged that after his arrest the defendants unlawfully entered his premises, and that due to their negligence and malicious want of care, $29 cash, 23 cartons of cigarettes, and 73 cases of beer, were lost, stolen, or missing, and asked for damages for such property so lost or stolen in the sum of $442, and exemplary damages in the amount of $1,000.

In his fourth cause of action he alleged a conspiracy between the city marshal, defendant Moyer, and others to prevent him from selling beer or tobacco, and to prevent people from patronizing him in order to force him from the premises so that the building in which his business was located could be acquired by defendant Moyer, or others for whom he was acting, and to cripple and bankrupt the plaintiff; that the defendants circulated false reports that plaintiff had an unreliable and disreputable concern and that they would lock up plaintiff's business, both at Gage and at Shattuck, where he had another place of business, and destroy him as a business man. He incorporated in his fourth count the averments in his first cause of action as to the closing of his place of business and his arrest and imprisonment; alleged that he had lost customers and trade, and been prevented from continuing and increasing his business, by reason of the acts of defendants, and asked for damages by reason of said conspiracy and the acts done pursuant thereto in the sum of $3,000, and exemplary damages in the sum of $1,000.

The jury returned a verdict in favor of plaintiff in the first cause of action for $200 actual damages, and $500 exemplary damages; on his second cause of action for $105 actual damages, and $450 exemplary damages; on his third cause of action $442 actual damages, and $100 exemplary damages, and on the fourth cause of action $200 actual damages, and $100 exemplary damages. At the hearing on the motion for new trial the trial court required the plaintiff to remit the sum of $30 upon his first cause of action, and the sum of $110.19 upon his third cause of action. In order not to unduly lengthen this opinion, we are disposing first of the questions raised by defendant as to the actual damages allowed the plaintiff, and then the questions as to the allowance of exemplary damages.

Defendant contends that the verdicts are not sustained by the evidence. As to actual damages on plaintiff's first cause of action for attorneys' fees expended by him, examination of the record discloses that the evidence is insufficient to sustain the amount allowed by the court. Plaintiff produced one check for $20, which he testified was expended in connection with the charge of disturbing the peace, which was the charge upon which he was arrested, and which was thereafter dismissed, and from his testimony the jury was justified in finding that this was expended in connection with his arrest and his release from jail on bond. He produced another check, the amount of which is not shown, made to another attorney, but he could not testify as to what proportion of the amount shown by that check was paid to procure his release from jail, and while the court overruled objections to the introduction of the check in evidence, it was not introduced in evidence and apparently was not permitted to go to the jury. Therefore, the amount allowed by the jury above the $20, represented by the check introduced in evidence, was based solely upon speculation, and may not stand. There was no evidence that plaintiff expended any sum as attorneys' fees in reopening his place of business later in June of that year.

Defendant complains of instruction No. 15 by the trial court, which per-

mitted the jury to find for plaintiff in an amount not to exceed $400 for attorneys' fees expended by him in getting his place of business reopened and to represent him in the criminal charge wrongfully filed against him. In view of what we have said above, this instruction was erroneous, since plaintiff was entitled only to the $20 paid to his attorneys as above set forth.

On the second cause of action, as to the loss sustained by plaintiff to his business and reputation by the closing of his place of business, and his arrest, plaintiff produced no evidence whatever from which the jury could ascertain any actual damage. He was, however, entitled to nominal damages because of his wrongful arrest, and the unwarranted invasion of his property, and his evidence, if believed by the jury, was sufficient to establish that the closing of his place of business and his arrest were not justified, and were wrongful and malicious. The testimony was conflicting upon these points, and the question was one for determination by the jury, but because of the verdict in his favor he was entitled to nominal damages. Oklahoma City v. Hopcus, 174 Okla. 186, 50 P. 2d 216; 23 O. S. 1941 §98. The verdict of the jury for $105 as actual damages on this cause of action was not justified, and the trial court should have allowed plaintiff to recover on said cause of action nominal damages only. Plaintiff urges that $105 in itself is nominal damages, but the authorities are to the contrary. Price v. McComish, 22 Cal. A. 2d 92, 70 P. 2d 978. As stated in 15 Am. Jur. p. 392, §5, $1 is the amount usually adjudged where only nominal damages are allowed, and $100 or more does not come within the definition of nominal damages. The trial court on this count should have awarded plaintiff nominal damages in the sum of $1.

As to the third cause of action plaintiff's evidence tended to show that after his arrest and imprisonment, the city marshal, the defendant Moyer, and others, broke into his place of business in Gage, which was locked with a hasp and padlock, by tearing off the hasp, and searched his place for liquor under a search warrant, which plaintiff contends was invalid, and that when he later went back to his place of business he discovered that this hasp had not been properly replaced, so that the front door could be easily opened; that the lock on the back door had been changed, and that the tracks of an automobile or truck showed that some person to him unknown had stopped at the back door of the premises. He and his witnesses further testified that an inventory of the stock then taken established the loss of $29 cash, and of 74 cases of beer of the value of $288.57, and 23 cartons of cigarettes of the value of $43.24 had been carried away in addition to the $29 which he had in his cash drawer. It was admitted by the defendants that the $29 was taken away by Moyer, who was president of the local bank, at the direction of the city marshal, and held in the bank, and the trial court required the plaintiff to remit the sum of $110.19, and sustained the verdict. The testimony of the plaintiff and his witnesses, if believed by the jury, was sufficient to sustain the judgment for this amount, although there was no proof that the property was taken by defendants. Plaintiff alleged in his petition that the loss of said property was due to the negligent and malicious want of care on the part of the defendants, and his evidence showed that after the search of his premises the front door was left in such condition that anyone could open it and enter the place. We think it was the duty of defendants upon closing the place after executing the search warrant, and while plaintiff was imprisoned, to properly secure the door they broke open, and that the jury was justified in assuming that the theft of the property of plaintiff was due to their failure to exercise reasonable care to protect plaintiff's property when

plaintiff was confined and not in a position to take any steps looking to its safety.

On his fourth cause of action plaintiff produced no evidence of any acts on the part of defendants tending to destroy his business, trade, or to injure his reputation other than the evidence showing the closing of his place of business, his arrest, the searching of his premises while he was incarcerated and the loss of his property as a result thereof. Consequently, there was no evidence produced tending to prove his actual damage in the sum of $200 as allowed by the jury. Since he had asked for both actual and punitive damages for these wrongs on his previous causes of action, the trial court should have sustained defendants' motion for directed verdict as to the fourth cause of action. As stated in Allen v. Ramsey, 170 Okla. 430, 41 P. 2d 658, there is no such thing as a civil action for conspiracy, but the action is for damages caused by acts pursuant to the conspiracy. The gist of the action is the damage and not the conspiracy. Since plaintiff in his previous causes of action sought to recover for the wrongful acts which he alleged were perpetrated by the defendants pursuant to the conspiracy, and since his evidence did not tend to prove any additional acts, or show any additional damages, he was not entitled to recover under his fourth cause of action.

Coming now to the punitive damages allowed plaintiff because of the acts of the defendants as above set forth, we think the evidence was sufficient to sustain the verdict of the jury awarding punitive damages to plaintiff on his first, second, and third causes of action. Plaintiff testified that the defendant Moyer was not present when the marshal closed plaintiff's business, but shortly thereafter met plaintiff in the city of Gage and said to him that "we have locked the building up", and asked him if he did not wish that he had sold defendant that building, and further told plaintiff that he did not think the other place (evidently referring to plaintiff's place of business at Shattuck) would run much longer either. He testified that prior to the time his business was closed defendant Moyer had attempted to purchase from him the building in which he was conducting his business, and that he had refused to sell, and that Moyer thereupon stated that plaintiff would thereafter wish that he had sold it to him. He further testified that Moyer was present at the time of his arrest and actively assisted the marshal in arresting him, and that Moyer had frequently expressed himself as being antagonistic to the conducting of plaintiff's business in the building where it was then conducted.

Moyer in his testimony admitted that the city marshal counseled with him frequently in reference to the marshal's troubles, and admitted that on the date plaintiff was arrested, the marshal, although he had other men deputized to assist him, sent to church where Moyer was attending services and called Moyer out, and he then consulted with Moyer and deputized him also to assist him in making the arrest. He also admitted participating in the search of plaintiff's property while plaintiff was under arrest. He admitted that he wished to obtain the building in which plaintiff's business was located in order to install another business therein, and that he and every member of the group present when plaintiff was arrested were actively and frankly supporting and assisting the marshal, and that he and the group of citizens assisting the marshal were the aggressors. He also testified that as a public spirited citizen he personally did not like the way the business was operated, and that some other people agreed with him in that respect.

Defendant Moyer contends that he had nothing to do with the closing of the place and that at the time of the arrest and the subsequent search of

plaintiff's premises he had been deputized and called upon to assist the marshal, and was therefore bound to render such assistance as he could. But examination of the evidence in the record convinces us that it was sufficient, if believed by the jury, to justify them in concluding that Moyer, who was president of the bank and apparently an influential citizen in the community, was the motivating force behind the marshal's efforts to drive plaintiff out of business in that community; that the course of conduct pursued by the marshal, if not in fact instigated by Moyer, was at least approved by him, and that but for such instigation or approval the marshal would not have taken the steps he did to close plaintiff's business and arrest him. Moyer's admission that he had discussed the way plaintiff's business was run with other citizens and disapproved it; his desire to obtain the building occupied by plaintiff; his admission that the marshal had consulted with him with reference to plaintiff's business, and the fact that before the marshal arrested plaintiff he caused Moyer to be brought from the church to the marshal's place of business in Gage, an electrical shop run by the marshal, and counseled with him before any action was taken, tend to prove that Moyer was strongly opposed to plaintiff's conducting his business in the city of Gage, and was desirous of getting him out of the building occupied by him, if not out of the city, and that the marshal, knowing of these wishes or desires of Moyer, was harassing plaintiff and invading his personal and property rights in order to effectuate or carry out Moyer's wishes. The evidence produced by plaintiff tended to show that no justification existed for the wrongs inflicted upon him by Moyer and the marshal, and this evidence, coupled with the admission of Moyer, was sufficient to sustain the verdict of the jury for exemplary damages. Kurn v. Radencic, 193 Okla. 126, 141 P. 2d 580; McDonald v. Bruhn, 190 Okla. 682, 126 P. 2d 986;

15 Am. Jur. p. 718, §280; 25 C. J. S. p. 722, §123.

Defendant complains that the punitive damages are excessive, calling attention to Garrett v. Myers, 190 Okla. 273, 123 P. 2d 965. In that case, however, the cause of action was for fraud and there was no wrongful invasion of the rights of the defendant as in the instant case. Defendant also insists that where plaintiff filed to prove any damage or prove nominal damages only he was not entitled to exemplary damages.

In Halliburton-Abbott Co. v. Hodge, 172 Okla. 175, 44 P. 2d 122, a false imprisonment case, we said:

"Of course there must be an actionable wrong before there can be an allowance of punitive damages, but in order to authorize punitive damages, mere nominal damages are sufficient. The frequency of reported cases wherein the amount of punitive damages greatly exceeds the amount of actual damages serves to illustrate the purpose of punitive damages, the purpose being to punish defendant and to deter others from commission of the same wrong, rather than as compensation to the plaintiff."

In 15 Am. Jur. p. 738, §297, the author says that according to some courts the punitive damages awarded may largely exceed the compensatory damages, and need not bear any relation to compensatory damages, citing cases. It is further stated that it is difficult to lay down any rule at a test of whether such an award is excessive, and that while such award may be set aside if grossly excessive, or if it appears to be the result of passion, prejudice, improper sympathy, etc., it states that the court will not interfere except in extreme cases where it appears that an injustice has been done, but will proceed with more caution in such case than in a case where only compensatory damages are involved. It also holds that according to the weight of authority punitive damages may be recovered, although actual damages are

only nominal in amount. 155 Am. Jur. p. 708, §271. In 25 C.J.S., p. 737, §126, it is stated that there is no rule fixing a ratio or relation between the amount of actual damages and the amount of exemplary or punitive damages, and in section 118, p. 713, of the same volume, the author states that such damages may be awarded although only nominal damages are sustained by the plaintiff.

Defendant also complains of various instructions given by the trial court, some of which we have heretofore noticed. Complaint is made of Instruction No. 10 by which the jury was instructed that where one was called upon by an officer to assist him in making an arrest, it was the legal duty of the party so called upon to assist the officer. We think this instruction substantially states the law, and the fact that it is an abstract statement of law, without any attempt to apply it to the facts in this case, does not render it subject to criticism, where the testimony of the defendant was that they were called upon by the marshal, and there is no evidence to the contrary. He complains of the instructions as to exemplary damages for the reason that there can be no recovery of exemplary damages in the absence of actual damages. What we have said above disposes of this proposition. Defendant also complains of instruction No. 15, which we have already noticed. We agree with his complaint that a verdict should have been directed for him as to count four of the petition. Aside from the errors which we pointed out above in instruction No. 15, examination of the instructions show that they properly instructed the jury on the law of the case and did not present any reversible error.

We therefore conclude that the judgment on the first cause of action was excessive in the amount of $150; the judgment on the second cause of action was excessive in the sum of $104, and the judgment on the fourth cause of action gave to plaintiff $300 to which he was not entitled, the total amount of the judgment which is not sustained by the evidence being $554. The judgment being excessive, the cause should be reversed and remanded for a new trial, unless plaintiff within 20 days files a remittitur of all the judgment in excess of $1,403, in which event the judgment should be affirmed. Sinclair Oil & Gas Co. v. Allen, 143 Okla. 290, 288 P. 981.

In the event plaintiff fails to file the remittitur within the time above allowed, he shall be liable for all costs. If the remittitur is filed costs to be divised equally between the parties.

ARNOLD, C.J., and WELCH, DAVISON, HALLEY, JOHNSON, and O'NEAL, JJ., concur.