MOYER v. MEIER.

No. 34321.  Dec. 4, 1951.

*238 P. 2d 338.*

Billings & Billings, Woodward, and J. W. Burrow, Gage, for plaintiff in error.

Emmett A. Klem, Shattuck, and Claude E. Love, Oklahoma City, for defendant in error.

PER CURIAM. This is an action brought by plaintiff, Jake Meier, against Frank Miller and Melvin Moyer for

damages for false arrest and false imprisonment. The action grows out of the closing of a beer tavern, known as the "Longhorn Bar", in the town of Gage, owned by one Cordell and operated by one Foster as bartender. The defendant Miller was constable and town marshal of Gage. He was assisted in making the arrest by Moyer, a private citizen, who, with others, was summoned by the officer to assist him in making the arrest. The plaintiff was in company with Cordell and Foster at the time of the arrest and was in the tavern with them immediately before the arrest.

The court overruled defendants' demurrer to the evidence and motion for a directed verdict, and submitted the case to the jury, which returned a verdict for $500 actual damages and $500 punitive damages against both defendants. Judgment was entered in accordance with the verdict. Moyer alone appeals.

The first assignment which we will consider is the action of the court in submitting the case to the jury over the objection of defendants. This requires a consideration of the evidence in the record against Moyer.

The evidence against Moyer in the instant case falls far short of that in the case of Moyer v. Cordell, 204 Okla. 255, 228 P. 2d 645. The facts are more similar to those in Moyer v. Foster, 205 Okla. 26, 234 P. 2d 415.

The arrest and imprisonment occurred on May 4th. One week before, the marshal had raided the tavern, thrown out the people who were disturbing the peace, and placed a lock on the door with a notice that the place was closed under order of the marshal. After the tavern had remained closed during this week, on the day of the arrest, Cordell, the owner, who lived at Shattuck, accompanied by the plaintiff, came to Gage, and in company with Foster obtained permission from the marshal to enter the tavern for the purpose of preserving the property

in the tavern. These three men then entered the tavern and locked the door. Shortly thereafter, the marshal attempted to enter the tavern and make a search for liquor, under a search warrant then in his possession for that purpose. The three men on the inside refused to admit him. He then summoned to his aid some private citizens to assist him in executing the warrant and making the arrest. Up to this time, Moyer had not appeared on the scene, and thus the difficulty between the marshal and the three men in the tavern occurred before Moyer had any connection with the transaction.

About 12:30 p.m., a messenger called defendant out of church and he went to the place of business of Frank Miller, the marshal, where he met with the marshal and several other men; the marshal advised him and the other men present that he desired their assistance in arresting Cordell, the plaintiff, and another, who were then in the tavern, and who, according to the marshal, had locked themselves in the tavern and were resisting arrest. Defendant was shown the warrant for searching the tavern. The marshal and the citizens, whom he had thus deputized, proceeded to the tavern and attempted to gain entrance through the front door, which was still locked. While they were so engaged, the three men apparently came out through the rear door and came around to the front, where they were arrested by the marshal for resisting an officer. The evidence shows that at this time both Moyer and Hall, in response to the request or requirement of the city marshal for assistance, were present with other parties. The marshal thereupon ordered the prisoners taken to Arnett in a pickup truck, driven by Hall, who was accompanied by the defendant. The marshal followed them in his automobile. At Arnett, the parties contacted one Johnson, a deputy sheriff, and the prisoners were locked in the county jail under the orders and direction of the marshal. The deputy sheriff advised that since it was Sunday the prisoners

could not make bond, and suggested some arrangement be made for them to appear the next day, to which the marshal responded, "No, I brought them up here to put them in jail, and I want to see they are put in before I leave." No force was used or threats made against the plaintiff at any time. There is no evidence that Moyer "required" or "procured" the officer to do any of these acts, but in all things he acted under the orders and direction of the officer.

In such case, the defendant is not liable to plaintiff. 22 Am. Jur. p. 373, §32, and 35 C.J.S. p. 568, §43, and Firestone v. Rice, 71 Mich. 377, 38 N.W. 885, 15 Am. St. Rep. 266; Presley v. Ft. Worth & D. C. R. Co. (Tex Civ. App.) 145 S.W. 669; Mackie v. Ambassador Hotel & Inv. Corp. et al., 123 Cal. App. 215, 11 P. 2d 3.

In the citation from Corpus Juris, supra, the following rule is announced:

"Under statutes authorizing peace officers to summon private persons to assist them in making an arrest, see Arrest, sec. 16 A. It is ordinarily held that the private person is not to be held liable where he obeys such a summons coming from a known peace officer, without regard to whether or not the officer was acting under a warrant, or whether, if acting under a warrant, such warrant was valid or invalid, or whether if acting without a warrant, the arrest was legal or illegal."

By statute, 22 O.S. 1941 §91, a public officer authorized to execute process, when he finds it necessary, may summon to his aid other citizens to assist him. By 21 O.S. 1941 §537, every person refusing to aid the officer, when summoned by him, is guilty of a misdemeanor.

Construing similar statutes, the Supreme Court of Michigan in Firestone v. Rice, supra, lays down the following rule in the second paragraph of the syllabus:

"Under How. St. Mich., Secs., 591, 9250, authorizing the sheriff to call upon citizens for aid in apprehending or securing a person for crime, and providing a penalty for the refusal of any person to furnish such aid, a person is justified in aiding the sheriff in making an arrest, if so required by the sheriff, and he does nothing wantonly nor beyond what he is required to do, though the sheriff's acts are without authority."

In discussing the reason for the rule, the court said in the opinion:

"We do not think that a man called upon by the sheriff is required, at his peril, to ascertain whether the sheriff has a proper warrant, or whether the offense charged against the person to be arrested is a felony, or that he may refuse to act until he is satisfied that the sheriff is acting legally, or within the scope of his office, in a criminal case. If he were allowed to do this, the object of the law would be defeated, and the statute rendered nugatory in many cases. There is often no time for inquiry, as action must be immediate. The necessity of the case will not permit the person thus summoned to stop to examine the papers, or take counsel as to the legality of the process in the officer's hands, or to inquire whether any process is necessary in the particular case where his aid is required. Therefore the person who responds to the call of one whom he knows to be an officer is protected by the call from being sued for rendering the requisite assistance. The officer may not be acting legally, and therefore a trespasser; but the person assisting him, at his request or command, and who relies upon his official character and call, is protected by the law, and must necessarily be, against suits for trespass and false imprisonment, if, in his acts, he confines himself to the order and direction of the sheriff. McMahan v. Green, 34 Vt. 69; Reed v. Rice, 2 J. J. Marsh. 44."

It will be seen from the foregoing rule that the only contingency in which the defendant might be liable for his acts, when summoned to assist the officer, is that he acts wantonly or beyond what he is required to do. The record before us does not bring the defendant within this proviso. His acts were not wanton and he did not go beyond what

he was required to do under the statute.

But plaintiff claims the defendant is not protected by this rule, because he alleges that the defendant Moyer "procured" Miller, the officer, to arrest him, and "directed" Miller to put him in jail. The evidence in the record fails to sustain this allegation. On the contrary, the evidence shows that the arrest was made by the marshal, who was assisted by Moyer and other citizens summoned to his aid; that all the acts of Moyer were done under the direction of the marshal.

The plaintiff had no interest in the tavern. He lived in Shattuck and merely accompanied Cordell to Gage on the day of the arrest because he could obtain a ride. He was probably a stranger to Moyer. Thus, no motive appears why Moyer should initiate proceedings against plaintiff or "procure" or "direct" the marshal to do so. Furthermore, plaintiff testified that Moyer showed no malice or oppression against him.

"Q. Did Mr. Moyer or Mr. Hall show any malice or oppression toward you? A. No. It was true then and true now? A. Yes."

Plaintiff attaches much significance to the statement of the defendant at the time of the arrest that he was one thousand per cent back of the officer. This does not show wantonness, but merely that he was wholeheartedly supporting the marshal, as it was his duty to do.

The evidence was wholly insufficient to submit to the jury the issue of the liability of the defendant for the false arrest and imprisonment of the plaintiff. The motion for a directed verdict should have been sustained. In Firestone v. Rice, supra, the court stated in the opinion. "The Court would have been warranted in directing a verdict in Fenn's favor." In Presley v. Ft. Worth & D. C. R. Co., supra, a directed verdict for the defendant was sustained. In Mackie v. Ambassador Hotel & Inv.

Corp., supra, the appellate court reversed and set aside a verdict for plaintiff. In these cases, the facts were not dissimilar to those in the instant case.

Our conclusion is further fortified by the absence of any competent proof of damages to plaintiff as alleged in the amended petition. The allegation is that "he was compelled to pay out a large sum of money, to wit: Five Hundred ($500.00) for counsel fees and other expenses herein". No "other expenses" were proved. As to attorney's fees, plaintiff was asked if "you incurred any attorney fees as a result of having to get yourself discharged from jail on May 5th", and he answered, "No". When the question was repeated, he answered, "Yes". However, in his deposition, taken before the trial, he was asked: "Did you hire or retain an attorney to represent you?", and he answered, "No." He further testified at the trial he had paid no attorney fee. This evidence was insufficient to submit to the jury the question of payment of an attorney fee, as alleged.

Neither is the plaintiff entitled to nominal damages from the defendant Moyer. Even if the officer's acts were without authority of law, which is not admitted, the defendant would not be liable when he was rendering the assistance required by the officer, and his acts were not wanton nor beyond what he was required to do. Firestone v. Rice, supra. This distinguishes the instant case from Oklahoma City v. Hopcus, 174 Okla. 186, 50 P.2d 216, and cases therein cited.

It follows that plaintiff, having failed in his proof of actual damages, was not entitled to punitive damages. Furthermore, there was no evidence in the record to support the claim for exemplary damages and this issue should not have been submitted to the jury.

Defendant strenuously challenges the correctness of the charge to the jury, but in view of the conclusion we have reached, it is unnecessary to consider this assignment.

Since it appears that the quoted testimony of plaintiff would preclude him from a recovery, he is not entitled to a new trial.

"Similarly, where there is a mere insufficiency of evidence to sustain the verdict in a law action, as in the case just quoted, a new trial should be granted. But where the undisputed evidence *precludes* recovery, and it does not appear that it can be refuted on another trial, and there is a fair certainty that such evidence presents the true situation, there is no good reason for ordering a new trial. Especially is this true where that which precludes recovery is the evidence of the party who prevailed." Great Northern Life Ins. Co. v. Farmers Union Co-Op Gin Co., 181 Okla. 370, 73 P. 2d 1155.

Reversed and cause remanded, with directions to dismiss plaintiff's action.

This Court acknowledges the services of Attorneys W. E. Crowe, Hugh Conway, and E. S. Champlin, who as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the Court.

HALLEY, V. C. J., and WELCH, GIBSON, DAVISON, JOHNSON, and BINGAMAN, JJ., concur. O'NEAL, J., dissents.