**FILED**
United States Court of Appeals
Tenth Circuit

**June 21, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MATT MEIER; SHERYL MEIER; KAI
BACH, on behalf of themselves and all
others similarly situated,

     Plaintiffs - Appellants,

v.

CHESAPEAKE OPERATING L.L.C.;
DEVON ENERGY PRODUCTION
COMPANY, LP; MIDSTATES
PETROLEUM COMPANY LLC; NEW
DOMINION, LLC; RANGE
PRODUCTION COMPANY, LLC;
SPECIAL ENERGY CORPORATION;
WHITE STAR PETROLEUM, LLC,*

     Defendants - Appellees.

No. 18-6152
(D.C. No. 5:17-CV-00703-F)
(W.D. Oklahoma)

_____

**ORDER AND JUDGMENT**\*\*
_____

---

\* While this appeal was pending, Defendant White Star Petroleum, LLC filed a
Notice of Bankruptcy. A bankruptcy petition operates as a stay of "the
continuation . . . of a judicial . . . proceeding against the debtor that was or could
have been commenced before the commencement of [the bankruptcy proceeding], or
to recover a claim against the debtor that arose before the commencement of the
[bankruptcy] case." 11 U.S.C. § 362(a)(1). On the other hand, an automatic stay
generally does not stay "litigation as to co-defendants of the bankrupt." _Fortier v.
Dona Anna Plaza Partners_, 747 F.2d 1324, 1329 (10th Cir. 1984). Accordingly, this
case is stayed as to White Star Petroleum, but not as to the other defendants.

\*\* This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and
Tenth Circuit Rule 32.1.

Before **HARTZ**, **EBEL**, and **McHUGH**, Circuit Judges.

_____

Several Oklahoma homeowners brought a class-action lawsuit against operators of wastewater disposal wells for hydraulic fracturing operations, alleging the injection wells were significantly increasing seismic activity across large portions of Oklahoma. The only damages the homeowners sought were the increased costs of obtaining and maintaining earthquake insurance. The district court dismissed the lawsuit for failure to state a claim, reasoning that Oklahoma law does not permit recovery of increased insurance premiums stemming from a defendant's creation of risk where plaintiffs have not suffered any actual earthquake damage to their persons or property. On appeal, the homeowners argue the district court dismissed the lawsuit based on an erroneous _Erie_ guess of Oklahoma tort law, and, in the alternative, they request that this court certify the question to the Oklahoma Supreme Court. We decline to certify the question and affirm the district court.

## I.   BACKGROUND

Plaintiffs Matt Meier, Sheryl Meier, and Kay Bach (collectively, "the homeowners") all own homes and property in Oklahoma. The defendants in this case are seven oil and gas companies whose hydraulic fracturing operations in Oklahoma involve the injection of wastewater deep into the ground. The homeowners allege that "[b]y injecting millions of barrels of wastewater below the Arbuckle, Defendants

have directly caused [an] unprecedented rise in Oklahoma earthquake activity."[1] App. at 38. They claim that "[m]ultiple scientific studies have established a causal link between the injection of production wastewater into the Arbuckle via disposal wells," and they cite several studies indicating that "the number of [earth]quakes in Oklahoma [has] increased exponentially after 2008." *Id.* at 39, 49. This increase in earthquake activity, they allege, "has caused some earthquake insurance companies to hike their premiums by as much as 260 percent in the last three years alone, and many companies have ceased writing new insurance policies." *Id.* at 49. They claim that "[a]s a direct and foreseeable result of Defendants' conduct, Oklahomans have been forced to purchase earthquake insurance to protect their homes and property," and that because of the defendants' activities, such insurance costs significantly more than it previously did. *Id.* at 48. The homeowners do not claim this increased seismic activity has caused any actual damage to their homes or properties. Rather, they simply seek to recover "[t]he value of premiums paid to obtain earthquake insurance coverage; and/or . . . [t]he excess amount required to maintain earthquake insurance coverage after 2009," as well as punitive damages. *See id.* at 53–55.

The homeowners originally filed their complaint in Oklahoma state court in the District Court of Payne County, asserting class allegations and alleging public nuisance, private nuisance, ultrahazardous activities, and negligence. They sought to represent a class defined (in relevant part) as "[a]ll citizens in Oklahoma who

---

[1] The Arbuckle formation is a geological formation covering much of Oklahoma.

purchased or maintained earthquake insurance for their homes or property from 2008 through the time the class is certified." *Id.* at 49. The defendants removed the case to the federal district court for the Western District of Oklahoma pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d). All of the named defendants then moved to dismiss the homeowners' complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing the homeowners lacked standing to bring their suit and had failed to state a claim for relief. The district court held the homeowners did have standing to sue, but it dismissed their suit for failure to state a claim, predicting that "the Oklahoma Supreme Court, if confronted with the issue, would find the relief requested by plaintiffs not legally cognizable under the circumstances present in the case at bar."[2] *Id.* at 84. Reviewing case law from Oklahoma and other states, the court found no authority "support[ing] an award of insurance premiums under the circumstances presented." *Id.* at 84–85. The homeowners timely appealed.

## II.   DISCUSSION

We first consider the homeowners' request that we certify the question presented to the Oklahoma Supreme Court. Declining the invitation to certify the

---

[2] One of the defendants, Midstates Petroleum Company LLC, independently moved to dismiss the complaint pursuant to Rule 12(b)(1), arguing that any claims against it had been previously discharged pursuant to a bankruptcy order in a Chapter 11 bankruptcy case. The district court granted this motion in part and denied it in part. The homeowners never addressed the bankruptcy issue on appeal and so, as the defendants argue, the homeowners have forfeited any contention that the district court erred in that part of its ruling. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007).

question, we then analyze how the Oklahoma Supreme Court would answer the question.

## A. *Certification*

Where a district court declines to certify a question, "[a] motion for certification may be brought independently and anew to the court of appeals." *Pino v. United States*, 507 F.3d 1233, 1235 (10th Cir. 2007); *see* 10th Cir. R. 27.1. "Such a motion requires us to determine whether certification is appropriate as a de novo matter without regard to the district court's assessment." *Pino*, 507 F.3d at 1235 (emphasis omitted).

"[W]e will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks." *Id.* at 1236. Rather, we have set down the following framework for deciding whether to certify:

> While we apply judgment and restraint before certifying . . . we will nonetheless employ the device in circumstances where the question before us (1) may be determinative of the case at hand and (2) is sufficiently novel that we feel uncomfortable attempting to decide it without further guidance.

*Id.* Here, the question presented is clearly "determinative of the case at hand," *id.*, since it is the ground on which the district court granted the defendants' 12(b)(6) motion and the sole substantive question on appeal.

On the other hand, the second factor—whether the question is "sufficiently novel that we feel uncomfortable attempting to decide it without further guidance"— weighs somewhat against certification. *See id.* Admittedly, the question whether a plaintiff may collect damages for increased insurance premiums absent any physical

5

damage is novel insofar as the Oklahoma Supreme Court has not specifically

addressed it. Indeed, some good-faith arguments can be adduced in favor of the

homeowners' position. Nevertheless, as we discuss in the following section, it is

highly unlikely, given Oklahoma law and the bulk of out-of-state authority, that the

Oklahoma Supreme Court would hold in favor of the homeowners. "When we see a

reasonably clear and principled course, we will seek to follow it ourselves"—even if

no state supreme court precedent is directly on point. *Pino*, 507 F.3d at 1236; *see also*

17A Fed. Prac. & Proc. § 4248 (3d ed.) ("Questions ought not be certified if the

answer is reasonably clear."). Because we can pursue a "clear and principled course"

here without troubling the Oklahoma Supreme Court for guidance, the second *Pino*

factor weighs against certification.

Apart from these two factors, an additional consideration strongly discourages

us from certifying: namely, the fact that the homeowners never requested

certification until the district court ruled against them on the merits.[3] Where a party

does not initially request certification from the district court, but raises the issue for

the first time after an adverse district court ruling, this weighs heavily against

certification.[4] *See Pacheco v. Shelter Mut. Ins. Co.*, 583 F.3d 735, 738 (10th Cir.

---

[3] None of the parties mentioned this critical fact in their briefing before this court. Still, because the decision whether to certify "rests in the sound discretion of the federal court," we take this fact into account for our analysis. *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974).

[4] Some states do not allow federal district courts to certify questions and in those states, it would make little sense to fault a party for failing to request that the district court do so. *See, e.g.*, Cal. R. Ct. 8.548(a) (allowing certification only from

2009). "Otherwise, the initial federal court decision [would] be nothing but a gamble with certification sought only after an adverse decision." *Perkins v. Clark Equipment Co., Melrose Div.*, 823 F.2d 207, 210 (8th Cir. 1987); *see also Complaint of McLinn*, 744 F.2d 677, 681 (9th Cir. 1984) ("Ordinarily such a movant should not be allowed a second chance at victory . . . .").

Because the question is not "sufficiently novel that we feel uncomfortable attempting to decide it without further guidance," and because the homeowners did not seek certification until after they were unsuccessful in the district court, we decline to certify the question. Instead, we now proceed to the merits and consider whether, under Oklahoma law, a homeowner can sue for increased insurance premiums absent any actual damage to property.

## B. *Damages for Increased Insurance Premiums*

The district court dismissed the homeowners' lawsuit for failure to state a claim, reasoning that Oklahoma law does not recognize a claim for increased

---

"the United States Supreme Court, a United States Court of Appeals, or the court of last resort of any state, territory, or commonwealth"). Every state in the Tenth Circuit, however, allows federal district courts to submit certified questions to the state supreme court. *See* Colo. App. R. 21.1 ("The supreme court may answer questions of law certified to it by . . . a United States District Court . . . ."); Kans. Stat. Ann. § 60-3201 ("The Kansas supreme court may answer questions of law certified to it by . . . a United States district court . . . ."); 20 Okla. Stat. Ann. 1602 ("The Supreme Court and the Court of Criminal Appeals may answer a question of law certified to it by a court of the United States . . . ."); N.M.R.A. 12-607 ("The Supreme Court may answer by formal written opinion questions of law certified to it by a court of the United States . . . ."); Utah R. App. P. 41(a) ("The Utah Supreme Court may answer a question of Utah law certified to it by a court of the United States . . . ."); Wyo. Stat. Ann. 1-13-106 ("The supreme court may answer questions of law certified to it by a federal court . . . .").

7

insurance premiums based on a risk that "has not *materialized*"—that is, where "plaintiffs have suffered no damage to their homes or their persons." *See Meier v. Chesapeake Operating L.L.C.*, 324 F. Supp. 3d 1207, 1219 (W.D. Okla. 2018). We agree.

"We review de novo the dismissal of a complaint for failure to state a claim under Rule 12(b)(6)." *Childs v. Miller*, 713 F.3d 1262, 1264 (10th Cir. 2013). Moreover, in a diversity action, "we review the district court's interpretation and determination of state law de novo." *Cornhusker Cas. Co. v. Skaj*, 786 F.3d 842, 850 (10th Cir. 2015) (quotation marks omitted). As a federal court sitting in diversity, we must "conform to Oklahoma's substantive law." *Stauth v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 236 F.3d 1260, 1267 (10th Cir. 2001). Where, as here, "no decision of a state's highest court has addressed an issue of that state's law," the federal court "must predict how the State's highest court would rule." *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1228 (10th Cir. 2001). In doing so, "[w]e are free to consider all resources available, including decisions of [Oklahoma] courts and the general trend of authority." *Pehle v. Farm Bureau Life Ins. Co.*, 397 F.3d 897, 901–02 (10th Cir. 2005) (quotation marks omitted).

Although no Oklahoma authority specifically addresses the question at hand, "other states have consistently failed to recognize a cause of action for increased insurance premiums based on a tortfeasor's negligence." *Severn Place Assoc's v. Am.*

8

*Bldg. Serv., Inc.*, 930 So. 2d 125, 128 (La. App. 2006) (collecting cases).[5] On this point, the defendants have amassed significant case law rejecting the notion of damages for increased insurance premiums. *See, e.g.*, *Schipke v. Grad*, 562 N.W.2d 109 (S.D. 1997) (refusing to allow a cause of action for increase in employer's workers' compensation premiums); *RK Constructors, Inc. v. Fuso Corp.*, 650 A.2d 153 (Conn. 1994) (same); *Johnson v. Broomfield*, 580 N.Y.W.2d 122 (N.Y. Jus. Ct. 1991) (concluding that a negligent driver was not liable for increase in plaintiff's car insurance premiums because damages were too remote and driver had no control over plaintiff's contractual arrangement with his insurer).

The homeowners cite decisions applying the loss-of-a-chance doctrine to award damages proportionate to the increased risk a tortfeasor has caused, even though that risk has not yet materialized into an actual harm. *See, e.g.*, *McKellips v. Saint Francis Hosp., Inc.*, 741 P.2d 467, 474–75 (Okla. 1987). But the Oklahoma Supreme Court has expressly declined to extend this doctrine—whose "essence . . . is the special relationship of the physician and the patient"—beyond the medical-malpractice context. *Hardy v. S.W. Bell Tel. Co.*, 910 P.2d 1024, 1029 (Okla. 1996). For example, in *Hardy*, a plaintiff brought a wrongful death claim against a telephone

---

[5] The homeowners rightly observe that Louisiana civil decisions, grounded as they are in codal law, might be unhelpful in resolving questions of common law. *See Frederick v. Brown Funeral Homes, Inc.*, 62 So. 2d 100, 111 (La. 1952) ("While the common-law authorities relied upon and cited by the plaintiffs may be persuasive, they are not decisive of the issue in view of our codal articles and jurisprudence."). Like the district court, however, we find *Severn Place Associates* persuasive mainly for its survey of other states' approaches to the issue.

company, alleging the company had negligently caused a failure of the 911 emergency system, thus preventing him from promptly calling an ambulance when his wife suffered a heart attack. *Id.* at 1026. Although the plaintiff admitted he did "not know if his wife would have survived if the ambulance could have been summoned and had arrived in its normal response time," he argued "the delay caused a loss of his wife's chance to survive the heart attack." *Id.* at 1027. On a certified question, the Oklahoma Supreme Court called the loss-of-a-chance doctrine a "remarkable exception to the traditional rule of the standard of proof of causation" and declined to extend the doctrine to a non-physician tortfeasor's creation of risk, reasoning that "application of the lost chance of survival doctrine to these facts . . . would cause a fundamental redefinition of the meaning of causation in tort law." *Id.* at 1029–30.

Thus, it is highly unlikely the Oklahoma Supreme Court would allow proportional recovery for unmaterialized risk here, given its refusal to extend the loss-of-a-chance doctrine elsewhere. Apart from the medical malpractice context, none of the authorities the homeowners cite actually support "a recovery in tort . . . *without* . . . personal injury or property damages." Appellants' Op. Br. at 17 (quotation marks omitted); *see Midwest City v. Eckroat*, 387 P.2d 123, 127–29 (Okla. 1963) (allowing nuisance damages where adjacent sewage plant turned creek running through property green with slime); *Sand Springs Materials LLC v. City of Sand Springs*, 243 P.3d 768, 770–75 (Okla. Ct. Civ. App. 2010) (discussing a zoning

10

appeal involving a special use permit to operate a rock quarry but never addressing tort damages).

The homeowners also argue, "[T]he district court here found the injury [they] suffered . . . was *not* too remote or unforeseeable to justify dismissal under Rule 12(b)(6)." Appellants' Reply Br. at 11. Based on their record citations, the homeowners are apparently referring to the district court's conclusion that they had standing to sue (specifically addressing the injury-in-fact component of the standing inquiry). *See* App. at 80 ("The court finds that these allegations are sufficient to demonstrate an actual concrete and particularized injury-in-fact."). But "one must not 'confus[e] weakness on the merits with absence of Article III standing.'" *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 135 S. Ct. 2652, 2663 (2015) (quoting *Davis v. United States*, 564 U.S. 229, 249 n.10 (2011)). The injury-in-fact analysis for standing purposes is distinct from the question whether a plaintiff has adequately pleaded a claim for damages under Oklahoma law. Indeed, if courts conflated the two analyses, then every plaintiff who satisfies the minimum Article III requirements for standing would necessarily survive a 12(b)(6) motion, and could proceed to discovery, on the sole basis of a nominal damages claim. But such is not the case. Injury-in-fact for standing purposes simply requires that the plaintiff have a "sufficient personal stake" in the outcome of the litigation; "it in no way depends on the merits of the claim." *ASARCO Inc. v. Kadish*, 490 U.S. 605, 613, 624 (1989) (quoting *Warth v. Seldin*, 422 U.S. 490, 500 (1975)) (quotation marks and alteration omitted). In contrast, the "injury" required for purposes of 12(b)(6) is one that

11

satisfies the damage element of the plaintiff's tort claim under Oklahoma law. *Burnett v. Mortg. Elec. Registration Sys.*, 706 F.3d 1231, 1236 (10th Cir. 2013) (evaluating 12(b)(6) motion by "comparing the pleading with the elements of the cause(s) of action" and determining whether the plaintiff "set forth plausible claims animating the elements of her causes of action" (quotation marks omitted)); *see also Richards v. City of Lawton*, 629 P.2d 1260, 1263 (Okla. 1981) ("An essential element in every common-law negligence-based tort claim is the occurrence of damage proximately caused by the breach of an alleged duty."). As discussed, the homeowners have not adequately alleged such an injury under Oklahoma law.

The homeowners also argue Article 2, § 6 of the Oklahoma Constitution and Title 23, § 3 of the Oklahoma Statutes support their right to damages by creating a broad right to recovery for "*all* those [damages] allowed by the common law." Appellants' Op. Br. at 9. But this argument plainly mischaracterizes the two provisions it relies on. Neither one creates a freestanding entitlement to relief for wrongs: courts have repeatedly explained that Article 2, § 6 of the Oklahoma Constitution merely "mandates that the courts should be open and afford a remedy for those wrongs that are recognized by the law of the land." *McCormick v. Halliburton Co.*, 895 F. Supp. 2d 1152, 1156 (W.D. Okla. 2012) (quoting *Rivas v. Parkland Manor*, 12 P.3d 452, 457–58 (Okla. 2000)); *see also City of Anadarko v. Fraternal Order of Police, Lodge 118*, 934 P.2d 328, 330 (Okla. 1997) ("Section 6 is intended 'to guarantee that the judiciary would be open and available for the resolution of disputes, but not to guarantee that any particular set of events would

12

result in court-awarded relief.'" (quoting *Rollings v. Thermodyne Indus.*, 910 P.2d 1030, 1032 (Okla. 1996))); *Adams v. Iten Biscuit Co.*, 162 P. 938 (Okla. 1917) ("Neither do we think [Article 2, § 6] was intended to preserve a particular remedy for given causes of action in any certain court of the state, nor was it intended to deprive the Legislature of the power to abolish remedies for future accruing causes of action . . . ."). Similarly, Title 23, § 3 of the Oklahoma Statutes merely defines recoverable damages as "compensation . . . in money" for a "detriment" caused by "the unlawful act or omission of another." 23 Okla. Stat. Ann. § 3. Because the creation of an unmaterialized risk is not an "unlawful act or omission" under Oklahoma tort law, *see id.*, and increased insurance premiums based on such risk are not damages "allowed by the common law," *see* Okla. Const. Art. 2, § 6, neither of these provisions creates a cause of action where the homeowners have otherwise failed to demonstrate one.

Finally, the homeowners argue that the district court improperly dismissed their suit because, where only damages are disputed, Oklahoma law reserves the question for a jury. To be sure, Oklahoma courts have repeatedly recognized that "[w]here it is shown that some damage has resulted from [a] defendant's wrongful act, uncertainty as to the exact amount is no reason for denying damages altogether." *George v. Greer*, 250 P.2d 858, 860 (Okla. 1952) (quoting 25 C.J.S. *Damages* § 162 (1952)). But that principle is inapposite here, where the homeowners have failed to plead any legally cognizable harm. The question presented is not simply what damages the homeowners are entitled to, but, rather, whether the sole "relief" they

13

request in their complaint "is legally cognizable." *Meier*, 324 F. Supp. 3d at 1215.

Because the homeowners pleaded no legally cognizable claim for relief, the district

court properly dismissed their complaint under Rule 12(b)(6).[6]

### III.    CONCLUSION

For the foregoing reasons, we decline to certify the question to the Oklahoma

Supreme Court and we affirm the district court.

Entered for the Court


Carolyn B. McHugh
Circuit Judge

---

[6] The homeowners argue for the first time in their reply brief that even if they are not entitled to damages based on increased insurance premiums, "[a]t the very least, Oklahoma law would allow the recovery of nominal damages," which in turn would support punitive damages. Reply Br. at 8–9; *see Moyer v. Cordell*, 228 P.2d 645, 650 (Okla. 1951) ("[I]n order to authorize punitive damages, mere nominal damages are sufficient." (quoting *Halliburton-Abbott Co. v. Hodge*, 44 P.2d 122, 127 (1935))). Because they never requested nominal damages in their complaint, did not raise the issue in their briefing to the district court, and did not address the argument in their opening brief, they have waived this argument. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998). In any event, even nominal damages require "an actionable wrong," which the homeowners have failed to plead. *Moyer*, 228 P.2d at 650 (quoting *Halliburton-Abbott*, 44 P.2d at 127).

14

18-6152, *Meier, et al. v. Chesapeake Operating*

**HARTZ**, J., Circuit Judge, concurring.

I am pleased to join the panel opinion except for the discussion of certification. I agree that we should not certify to the Oklahoma Supreme Court the issue presented on this appeal, but my reason is simply that there is little doubt how the state court would resolve that issue.

I realize that the panel opinion follows circuit precedent in its discussion of certification, and much of that precedent is sound. But I am afraid that some of the things this court has said in the past were ill-conceived, or at least are now outdated. We should not assume that state high courts consider it a burden to receive requests for certification from us. No doubt some of those courts have such caseloads that they do not welcome additional work. But many are eager for the opportunity to address unresolved issues of state law. They are, of course, the proper institutions to declare what state law is. Yet in an era when many significant disputes are referred to alternative dispute resolution and a high percentage of those that come to the courts are settled before definitive rulings on state law, the opportunity for state high courts to declare state law is dwindling. If we retain an issue for us to decide, it may be years before it needs to be resolved in state court.

Rather than using a one-size-fits-all approach to certification, the federal courts should discuss the matter periodically with the state courts. It seems to me that the desires of the particular state high court should be the primary consideration, at least so long as the state court can commit to promptly deciding certified issues so that justice is

not unduly delayed.  The federalism interest in coordinating with the state courts should outweigh such matters as a presumption against certification or whether or when the parties have sought certification during the litigation.[1]  If the appellate court is confronted with an important unresolved dispositive issue of state law, it should seriously consider certification regardless of whether any party is requesting certification or has requested it in district court.

---

[1]  A strong presumption against granting a request for certification from a party that did not seek certification at the trial level is particularly unwarranted.  The state high court may look unfavorably on a request from a trial court when the underlying facts are not fully developed or when it is not at all clear that the state-law issue will end up being dispositive, or even material, to the resolution of the dispute.  As a result, the propriety of certification may frequently be uncertain before judgment is entered.