## BARRETT v. UNITED STATES.

### No. 5683.

Court of Appeals of the District of Columbia.

Argued Nov. 2, 1932.
Decided Feb. 27, 1933.

HITZ and GRONER, Associate Justices, dissenting.

Harry T. Whelan, E. Russel Kelly, and W. Gwynn Gardiner, all of Washington, D. C., for appellant.

Leo A. Rover, U. S. Atty., and Julian I. Richards, Asst. U. S. Atty., both of Washington, D. C., for the United States.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

ROBB, Associate Justice.

Appellant, a detective sergeant of the Metropolitan police department of the District, was convicted in the court below under an indictment charging him with an assault "with his hands," and was sentenced to imprisonment for one year—the maximum. Title 6, § 29, D. C. Code 1929, section 806, D. C. Code 1924.

A defenseless woman had been brutally murdered by two masked men in committing a robbery. Appellant with other officers had been assigned to the case. They learned that a stolen automobile that had been used by

the murderers was parked near the Marne Apartments in this city. As investigation disclosed that complaining witnesses, Baber and Mahlon T. Milburn, Jr., occupants of apartment 205, answered the description of the murderers. A fight in the apartment on a night or two previous had attracted the attention of police officers, and Baber and Milburn had aroused the suspicion of attachés of the apartment house. (A search of the apartment by the officers disclosed a hat and coat that answered the description of the hat and coat used by one of the murderers.) Believing, and having reason to believe, that these two men were guilty of murder, it was decided to arrest them. Baber's arrest was accomplished as he entered the darkened apartment, where the officers awaited his coming about 10 p. m. The charge of assault grew out of that arrest.

Manifestly, appellant should have been allowed to prove facts and circumstances leading up to the arrest. As observed by the court in State v. Dierberger, 96 Mo. 666, 10 S. W. 168, 9 Am. St. Rep. 380, the burden is on the state to show the use of extreme measures, and in order to determine this it is necessary to look at all the surrounding circumstances. In making an arrest "the measure of necessary force is that which an ordinarily prudent and intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary." Castle v. Lewis (C. C. A.) 254 F. 917, 925; Coldeen v. Reid, 107 Wash. 508, 516, 182 P. 599.

In State v. Dunning, 177 N. C. 559, 562, 98 S. E. 530, 531, 3 A. L. R. 1166, the court said: "It is a principle very generally accepted that an officer, having the right to arrest an offender, may use such force as is necessary to effect his purpose, and to a great extent he is made the judge of the degree of force that may be properly exerted. Called on to deal with violators of the law, and not infrequently to act in the presence of conditions importing serious menace, his conduct in such circumstance is not to be harshly judged. * * * It is when excessive force has been used maliciously, or to such a degree as amounts to a wanton abuse of authority, that criminal liability will be imputed."

In Firestone v. Rice, 71 Mich. 377, 384, 38 N. W. 885, 15 Am. St. Rep. 266, the arresting officer, as in the present case, had reason to believe that the person he arrested for a felony was a desperate character, although it turned out afterwards that he was innocent

of any offense. The court held that there must be some discretion reposed in a sheriff or officer, making an arrest for a felony, as to the means taken to apprehend the supposed offender, and to keep him safe and secure after such apprehension, which discretion cannot be passed upon by a court or jury unless it has been abused through malice or wantonness, or a reckless indifference to the common dictates of humanity.

A police officer in arresting a person whom he has reason to believe guilty of a murder is justified in employing means that would be considered harsh and unnecessary in arresting one charged with a violation of a parking restriction under the traffic regulations. It is common knowledge that within the last few years a number of police officers have either lost their lives or suffered serious injury in attempting to arrest suspected murderers. Copeland v. United States, 55 App. D. C. 106, 2 F.(2d) 637; McHenry v. United States, 51 App. D. C. 119, 276 F. 761. The law should not and does not require such a sacrifice. Where such an arrest is made, the officer has a right to act with reference to the facts as they *then* appear to him, provided only that he acts in good faith. In other words, if the officer has reason to believe that the person he is about to arrest is a desperate character and acts accordingly, the officer is not to be convicted of assault because it subsequently develops that he was mistaken. State v. McNinch, 90 N. C. 695, 699; Grau v. Forge, 183 Ky. 521, 528, 209 S. W. 369, 3 A. L. R. 642; People of State of Colorado v. Hutchinson (C. C. A.) 9 F.(2d) 275, 276.

In the present case when appellant endeavored to introduce evidence as to information upon which the officers based their belief that the complaining witness was guilty of murder, the court said: "I have said time and time again that because this man (complaining witness) was suspected of a murder is no defense, and as far as I can see, it has nothing to do with the question as to whether he was assaulted or not. * * * It is not that he (appellant) made an unlawful arrest of Baber. It is not that he made an unlawful entry into an apartment. We are not trying those matters. We are trying one offense, namely, the physical assault made upon Baber." Counsel for appellant offered to show "all the information that the officers had received, from reliable sources; that they had good reason to believe that Baber and an accomplice were the parties implicated in the Jaynes murder case at that time, regardless of what developed later." The court

said: "I want to have a very clear understanding about this. I understand that you do not now claim that Baber was in any way connected with the Jaynes murder." Counsel responded, "Oh, no; we make no such claim. What I am trying to state to the court is what was in the minds of the officers at the time they made the arrest."

At the close of the evidence counsel for appellant asked the court to instruct the jury as a matter of law that the defendant (appellant) had a right to arrest the complaining witness. This prayer was denied. That he had such a right is plain and not disputed. It was error to refuse the instruction.

The court was then asked to instruct the jury that "if the facts presented to the defendant Barrett were such that a reasonable and prudent man would believe the witness Baber guilty of the robbery and murder of Mrs. Jaynes, and would have acted upon that belief, then the defendant was justified in making the arrest without a warrant, although subsequent events prove that no offense had been committed, or if committed that Baber had no connection with the crime." This prayer was refused. It should have been given.

Prayers of defendant Nos. 5 and 7, which were denied, read as follows: "(5) The court instructs the jury that in determining what force the defendant had a right to use in arresting Baber they should take into consideration the information which was in the possession of the defendant, namely, that the men he was seeking to arrest had held up at the point of a gun Mrs. Jaynes, had robbed her, had shot her, and that from this shooting she had died; and that the defendant had a right to grab the witness Baber as he, Baber, entered the apartment; and that if in view of all the circumstances they have a reasonable doubt as to whether or not Barrett used more force than was reasonably necessary they should acquit the defendant."

"(7) The jury are instructed that a police officer may use such force as a reasonable and prudent man would use under all the circumstances in making an arrest and in maintaining the arrest and, further, in considering whether the officer acted as a reasonable man would act, you may take into consideration every circumstance leading up to and surrounding the arrest and also any knowledge which the officer may possess concerning the danger of effecting the arrest."

These prayers state the law and were applicable under the facts of the case. It was prejudicial error not to give them.

In his charge the court instructed the jury that they were to consider all the evidence "to determine whether Barrett did strike and beat Baber, in and upon the face and head. * * * If Barrett did strike and beat Baber, was it necessary for him to do so in arresting Baber? * * * The charge here is one of assault, and the circumstances of this case are such that it is not necessary for you to consider whether this was a lawful arrest or not. The question is this: Did Barrett use force and violence on Baber, in making that arrest, without legal cause or justification? * * * If there was an assault made—this forceful, violent assault, if such an assault was made upon Baber—was there anything in the circumstances *there* which made it reasonably necessary for Barrett to have used such force and violence? * * * Were there any circumstances which, to a reasonably prudent man in Barrett's place, there to arrest Baber, reasonably justified actual force and violence? *Was there any resistance on the part of Baber? Was there any indication in his attitude as he entered the door to suggest the need of force and violence?"* (Italics ours.)

It thus appears that the court restricted the inquiry of the jury to the occasion of the arrest and ignored precedent circumstances. The words, "Was there any indication in his attitude as he entered the door to suggest the need of force and violence?" clearly indicate this. In the light of the authorities to which we have referred this was prejudicial error. If the officers had reasonable cause to believe, and in the exercise of their sound discretion honestly did believe, that Baber was guilty of murder, they had a right to resort to such measures as would effectuate the arrest without unnecessary risk to themselves. Any other rule would discourage officers in the performance of their duty and encourage criminals in resisting apprehension.

Judgment reversed, and case remanded, with instructions to grant a new trial.

Reversed, and new trial awarded.

HITZ, Associate Judge (dissenting).

I am unable to concur in the opinion and judgment of the court in this case, and the importance of this and its two companion cases involving alleged brutality of Washington police officers toward persons under arrest seems to justify a statement of dissent.

The appellant is a police officer of the District of Columbia convicted of assaulting a prisoner while arresting him.

Upon this conviction he was sentenced to imprisonment for one year, from which judgment this appeal was taken. The indictment in one count charges a simple assault by beating with hands, to which the defendant pleaded not guilty.

On April 5, 1931, two masked men held up and robbed a restaurant in Washington, in the course of which one of them shot the cashier, an elderly woman, who died of her wounds.

On that day the appellant, as a detective sergeant, was assigned to investigate the case and apprehend the robbers; later, three other detective officers were added to the assignment, and the four thereafter worked upon the matter together. Although a policeman was standing near the scene of the murder at the time, and the case was immediately reported, the murderers were never apprehended.

By other officers, and by eyewitnesses of the robbery and escape of the robbers, the four detectives were given what information was available, including a description of the robbers, their dress, and the motor car in which they disappeared. Shortly thereafter the officers located this car in the rear of a large apartment house, and procured information tending to show its use by two men occupying a certain apartment therein, numbered 205.

On the following day the officers obtained access to this apartment in the afternoon and there awaited the return of the tenants; one of whom arrived at 10:30 in the evening, when he was arrested, imprisoned for two days, and finally discharged as having nothing to do with the robbery and murder.

This prosecution grows out of assaults alleged to have been committed upon this prisoner, Baber, by the appellant, on the occasion of this arrest, both before and after the arrest was accomplished. The defendant testified at length that when assigned to the case he was given a description of the robbers and their motor car, which he later found parked near the apartment house; that an agent of the apartment house informed him that the occupants of 205 answered the description; that a fight had recently occurred in that apartment requiring the police to be brought in; that one of the occupants looked like a dope fiend and acted in a suspicious manner; that in the apartment they had found a hat and overcoat similar to those worn by one of the robbers; and that from all his information gathered from all sources he had formed the opinion that these men were the murderers. The three other officers gave similar testimony, by all of which it was fully brought before the jury that the officers believed they were engaged in a dangerous affair and about to arrest a man of desperate character who had just participated in the murder of a woman, and therefore had the strongest motive for escaping arrest even by another killing if necessary.

But the defendant claimed the right to go much further than this in the trial court and to rehash in detail all the mistaken information and false clues he had listened to while the murderers made good their escape; so the defendant's counsel asked him as a witness "to state to the jury the conversation he had with the colored janitor at this apartment house," and the "conversation with the rental agent at the apartment house," and "to tell the jury in your own words every fact, every piece of information you had concerning the occupants of 205 with the Jaynes murder, all the facts that you based your conclusions on that this man may have been the murderer." And the burden of complaint in this court is that the defendant was not permitted in the trial court to ask those and similar questions, and thereby to introduce cumulative evidence ad nauseum in support of a justification which he never offered. For the defendant was not charged with an unlawful arrest, but with the use of unlawful force in making a lawful arrest. Consequently, there was no occasion to introduce into the case every item of servants' gossip, and every idle rumor that four police officers might have heard in their investigation of an atrocious murder which had just shocked the community; all of which could only serve to legalize an arrest the legality of which was not questioned, and all of which turned out to be wrong.

The defendant's plea was not guilty; his testimony was that he never struck the complaining witness; the evidence of his associate officers was that none of them struck him or saw any one else strike him; and that if any blow befell him it was an unintentional incident of a short tussle while arresting him as he entered the room. But the complaining witness testified that as he opened his door and entered his room in the darkness he was struck in the face by a man whom he later learned was the defendant; that he was knocked down upon a couch, and beaten; that he was taken into another room after his arrest, and beaten; and beaten again while returning to the entrance room, all blows coming from the same man. No question is raised here as to the legality of the arrest

or of the entry of the officers into the apartment, but only as to the violent and unnecessary assaults in making the arrest, and thereafter.

While a police officer in making a lawful arrest may use such force as is necessary, not only to protect himself from injury, but to accomplish and maintain his arrest, he may use no more.

And if an arrest can be accomplished without violence, it should be done without violence.

A police officer is engaged in a hazardous calling, where he assumes risks of employment very different from those of a ladies' tailor, but once assumed he must carry them, and cannot transfer them to suspected persons by preliminary and unnecessary violence, no matter how strong his grounds of suspicion may be.

In this case four experienced officers, all armed, were in possession of Baber's apartment for several hours before he arrived; they had ample opportunity to arrange the field of action as they desired, and to get more men if they thought it necessary. They were in full control of the entrance, the exit, and the lights, when Baber entered in the darkness.

He says he was beaten first and arrested afterward; that he was beaten twice again after his arrest, and after his pleadings for mercy.

The officers say one of them grabbed him by the shoulder but that none ever intentionally struck him, and that after a tussle of twenty seconds he was under arrest. This contradictory testimony raised an issue to be decided only by a jury.

If Baber's account of the occurrence was true, the officers exceeded their right and their duty.

The jury accepted Baber's story and rejected the officers'; the issue was sent to the jury under lawful evidence and instructions, with sufficient testimony to support the verdict, if believed, and the verdict should therefore be upheld.

The trial judge was careful to give the defendant an ample opportunity to present his side of the issue there to be decided, namely, the manner of making this arrest, while he declined to let the defendant, by evidence or by prayer, raise a different issue as to whether or not the circumstances of suspicion justified an arrest at all.

In my opinion the due protection of citizens against unnecessary violence of police officers and due regard for trial by jury require the affirmance of this judgment.

Mr. Justice GRONER joins in this dissent.

GRONER, Associate Justice (dissenting).

I concur with Judge HITZ in thinking appellant had a fair trial and that the conviction should be upheld. I wish, however, to record my disapproval of the sentence imposed by the trial judge. The offense of which appellant was convicted was simple assault. The injury sustained by his victim was trifling, and a moderate fine rather than imprisonment for a year in jail would have better met the ends of justice.