### MORAN v. LUMBERMENS MUTUAL CASUALTY CO.

No. 8639.

United States District Court
E. D. Michigan S. D.

July 27, 1950.

Elmer H. Groefsema of Detroit, Mich., for plaintiff.

Alexander, Cholette, Buchanan, Perkins & Conklin of Detroit, Mich., for defendant.

LEDERLE, Chief Judge.

### Findings of Fact

1. This action involves a complaint by John H. Moran, a citizen of Michigan, against Lumbermens Mutual Casualty Company, an Illinois corporation, claiming damages in excess of $3000.00 for personal injuries received by plaintiff on March 8, 1949, at 11 p. m., in the Merrick Tavern, Telegraph and Joy Roads, Wayne County, Michigan, in connection with the arrest of plaintiff by Wayne County Deputy Sheriff Benjamin H. Sherman. Deputy Sherman was acting within the scope of his official duties as a member of the Road Patrol of Wayne County Sheriff Andrew C. Baird. Defendant's claimed liability was predicated upon two bonds issued by it, one being a $10,000.00 bond naming the People of the State of Michigan as obligee, and the other being a $5000.00 bond naming the Wayne County Board of Supervisors as obligee, each of which bonds guaranteed the Sheriff's faithful performance of his duties and a true accounting for moneys received by him.

2. At the commencement of the trial, plaintiff's attorney announced that he desired to waive the jury previously demanded by him and that plaintiff would not challenge the legality of plaintiff's arrest by Deputy Sherman but would predicate plaintiff's claim solely upon the theory that Deputy Sherman used excessive force and violence in executing his duties.

3. Plaintiff and a woman companion had been going from tavern to tavern in Wayne County just west of Detroit throughout the day of March 8, 1949, and they arrived at the Merrick Tavern some time after 10 o'clock in the evening. They sat near the end of the bar on high stools. Plaintiff was served with two bottles of beer, and his companion was served with shells of beer. During the time they were in the bar, plaintiff's companion made two trips to the public telephone booth just beyond the end of the bar. Each time she was followed to the booth by plaintiff, who rapped on the door and attempted to carry on a conversation with her. During these occurrences, there were two bartenders and

several customers present. Plaintiff's companion telephoned the Sheriff's office twice, complaining that plaintiff had committed a felony, and asking for the assistance of the Sheriff's Department.

4. Deputy Sherman and his partner, Deputy Cronin, dressed in uniforms of the Sheriff's Road Patrol, were on duty in a patrol car near the Merrick Tavern, and received the call by radio. They arrived at the tavern shortly after 11 o'clock, and asked one of the bartenders what the trouble was. The bartender reported that there had been no trouble in the tavern, but when informed by the officers that the Sheriff had received two telephone calls, the bartender advised them that the only person who had gone to the telephone booth was plaintiff's companion. Thereupon, the Deputies talked briefly with plaintiff and his companion about her complaint. Deputy Sherman asked plaintiff and his companion to go outside to discuss the matter further, explaining that his reason for doing so was to avoid a disturbance in the tavern.

5. When first asked to leave, plaintiff said, "Let me get a package of cigarettes first." This request was granted by Deputy Sherman, and he instructed Deputy Cronin to accompany the woman outside. The bartender furnished plaintiff with a package of cigarettes, and Deputy Sherman again asked plaintiff to go with him. Thereupon, plaintiff swore, stated he was not going any place, and reached for a beer bottle, which was on the bar, raising it in his hand with the intention of striking the officer. Deputy Sherman thought plaintiff was going to use the bottle to strike him, and immediately grabbed plaintiff by his clothing and attempted to pull him off the stool. At the time Sherman reached for plaintiff, he did not know that plaintiff had entwined his legs around the rungs of the stool. Plaintiff pulled the stool over with him, and in the fall his leg was broken. While dragging plaintiff to the doorway, Deputy Sherman felt plaintiff grab for his leg, and thereupon Sherman hit plaintiff with a flashlight which he had in his hands. When Deputy Sherman and plaintiff were outside of the tavern, the Deputy first learned that plaintiff's leg was broken, and

thereupon sent for an ambulance, which took plaintiff to a hospital. No contusions or abrasions resulted from the striking with the flashlight, and this caused plaintiff no injury.

6. The total amount of drinking that plaintiff had done during this twelve-hour escapade is problematical, but it appears that plaintiff was not so intoxicated that he did not fully understand everything that the Deputies said to him.

7. Although at the outset of the trial it was stipulated that at the time plaintiff received the injuries complained of, he was lawfully under arrest and in the custody of Deputy Sherman, plaintiff's counsel later claimed that it was the duty of Deputy Sherman to inform plaintiff further as to the cause of his arrest, in accordance with the provisions of 1929 Michigan Compiled Laws, Sec. 17,153, Sec. 28,878, M.S.A., which reads: "When arresting a person, without a warrant, the officer making the arrest shall inform the person arrested of his authority and the cause of the arrest, except when the person arrested is engaged in the commission of a criminal offense, or if he flees or if he forcibly resists arrest before the officer has time to inform him. * * *."

8. This contention of plaintiff is inconsistent with the language of the complaint and with the statement made by plaintiff's counsel at the commencement of the trial. However, even though this later contention is adopted, it would make no difference to the outcome of the case. A reasonable construction of the statute upon which plaintiff relies would require that the arresting officer should be permitted to exercise some discretion as to the time and place for explaining to the person being arrested the cause of his arrest. Obviously, a crowded tavern was not a proper place to discuss the character of the morals charges in respect of which plaintiff admitted he was legally in the custody of Deputy Sherman. However, plaintiff's injuries resulted solely and proximately from his conduct in forcibly resisting Deputy Sherman, whose quick actions were designed to and did protect him from being struck by the bottle plaintiff was wielding.

9. There was no wantonness, malice nor indifference to the dictates of humanity on the part of Deputy Sherman or Deputy Cronin, and nothing in their conduct which indicated wantonness, malice or indifference to the dictates of humanity.

10. Deputy Sherman is 28 years of age, married and the father of four children. He had been a Deputy Sheriff since January 1, 1947, prior to that had had experience in the office of Marshal, and had been a member of the Military Police during World War II. The conduct of both Deputies on the witness stand indicated that they were experienced officers, and on the occasion in question were solely interested in performing their official duties in a reasonable manner in the light of the circumstances. Plaintiff is a 40 year old married man with four children, whose personal, marital and occupational history as outlined in his testimony, together with his evasive demeanor and inconsistent statements made throughout this case, indicate him to be an unreliable person who would attempt to force others to pay for his own misconduct.

11. Deputy Sherman did not use any force in arresting or maintaining the custody of plaintiff that was in excess of that which Deputy Sherman reasonably believed to be necessary nor than was necessary under the circumstances. There was no reason for him to believe that plaintiff would so firmly entwine his feet with the legs of the stool that he could not have been easily removed. In performing his duties on this occasion, Deputy Sherman acted well within the reasonable discretion of an experienced officer and as a reasonably prudent and intelligent man would have acted under like and similar circumstances.

## Conclusions of Law

■ 1. This court has jurisdiction of this case as a civil action wherein the matter in controversy exceeds the sum or value of $3000.00 exclusive of interest and costs and is between citizens of different states. 28 U.S.C.A. § 1332(a) (1).

■ 2. There is some discretion reposed in a sheriff or other officer, making an arrest for felony, as to the means taken to apprehend the offender, and to keep him safe and secure after such apprehension, which discretion cannot be passed upon by a court or jury unless it has been abused through malice, wantonness, or a reckless indifference to the common dictates of humanity. The officer's duty is to take and safely keep the offender, and bring him before a magistrate, and, if he does this without wantonness or malice, a court cannot find that his precautions in such taking and keeping were useless and unnecessary or punish in damages such officer, his superior, or his superior's bonding company for doing what honestly appeared to him at the time to be reasonable and right. Firestone v. Rice, 1888, 71 Mich. 377, 38 N.W. 885, 15 Am.St.Rep. 266.

■ 3. The measure of force permissible in making an arrest for a felony and keeping the felon in custody, is that which an ordinarily prudent and intelligent person with the knowledge and in the situation of the arresting officer would have deemed necessary. Barrett v. United States, 1933, 62 App.D.C. 25, 64 F.2d 148.

■ 4. Where, as here, an officer arresting and maintaining custody of an admitted felon, carries out his duties with reasonable discretion and as a reasonably prudent and intelligent man would have acted under like and similar circumstances, without malice, wantonness or indifference to the dictates of humanity, and uses only such force as he reasonably believes necessary and such as was actually necessary under the circumstances, neither such officer, his superior officer, nor his superior officer's bonding company, in turn, is liable for injuries sustained by such felon.

■ 5. Accordingly, plaintiff cannot recover damages on the Sheriff's bonds issued by defendant, predicated upon alleged excessive force used by a Deputy Sheriff, and judgment of no cause for action must be entered.

## Judgment

In accordance with the foregoing findings of fact and conclusions of law, it is hereby ordered and adjudged that plaintiff recover nothing from the defendant upon the cause of action alleged in the complaint herein, and that defendant recover its taxable costs from plaintiff.