File Name: 08a0287n.06

Filed: May 22, 2008

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 07-1659

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

JEANNIE RYAN,

     Plaintiff-Appellant,

v.

HAZEL PARK, JASON WEIMER, J. CLARK, J. GIELNIAK,

     Defendants-Appellees.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

_____/

Before:     BOGGS, MARTIN and SILER, Circuit Judges.

     BOYCE F. MARTIN, JR., Circuit Judge. Jeannie Ryan appeals the district court's grant of summary judgment against her claim of excessive force by the police of Hazel Park City. Because we find that the police officers did not exceed the bounds of reasonable force, we AFFIRM the district court's decision.

I

     This case arises out of Ryan's arrest for (1) fleeing and eluding a police officer and (2) assaulting, resisting, or obstructing a police officer. The relevant events transpired on March 23, 2004, in Hazel Park, Michigan. Ryan did not feel well when she awoke on March 23; she had two seizures that morning and went back to bed until about noon. Upon waking, she still did not feel

well, but she drove to the home of an ex-husband, Bill Middleditch, to visit her daughter. Middleditch lived in Ferndale, about two or three miles from Ryan's house. Soon after arriving, Ryan had another seizure. Middleditch gave Ryan some medication, and she lay down on a couch. A short time later, Middleditch awoke Ryan and told her she needed to leave. Middleditch walked Ryan to her car, a black SUV. Because Ryan did not look well, Middleditch asked if she would be able to drive home. She said she would and got in the car. Middleditch rolled down Ryan's window a few inches and turned on the radio to help keep Ryan alert, and Ryan backed out of the driveway and began the drive home. She turned southward on Woodward Avenue and then eastward onto 9 Mile Road. She felt a seizure coming on and thought about stopping but decided she could complete the drive. Her condition worsened, and the last thing she remembers is turning southward onto John R Road in Hazel Park.

At about 6:30 p.m. on March 23, Officer Jason Weimer was driving northbound on John R Road when he saw Ryan's car swerve suddenly from one lane to another in the southbound lanes of John R Road. Weimer turned around to pursue Ryan. Ryan did not stop when he activated his lights so Weimer "gave a couple of blasts" with his siren, but Ryan still did not stop. Weimer then fully activated his siren. Ryan drove several blocks with Weimer in pursuit. Ryan finally stopped in a turn lane, and Weimer exited his vehicle and approached Ryan's SUV. Just as Weimer approached, Ryan drove off again, and Weimer ran back to his vehicle to continue the pursuit. Weimer radioed dispatch that he was in pursuit of a suspect that refused to stop. Ryan continued for several blocks, stopping at a traffic light and running a stop sign in the process, before turning westbound onto 8 Mile Road. There was no indication that she exceeded the speed limit during this time. Officer

Janeen Gielniak joined the pursuit, with her lights and siren activated, and Officer Jason Clark joined the pursuit on 8 Mile Road; he passed Gielniak, Weimer, and Ryan and positioned his patrol car in front of Ryan's SUV. Ryan continued to drive at about thirty miles per hour. Clark gradually slowed his vehicle, and he and Weimer boxed Ryan's car in and brought it to a stop.

After stopping Ryan's car, Clark and Gielniak approached the vehicle with guns drawn. The window was partially rolled down and the door was locked. They ordered Ryan to show her hands and exit the vehicle. Ryan would not show her hands or exit the vehicle, so Clark sprayed pepper spray at her face through the driver's side window. Weimer told Ryan he would break the window to unlock the door if she did not get out of the car, but she did not respond. Weimer tried unsuccessfully to break the window with a flashlight, and then shattered the window with a baton. Weimer then unlocked the door and pulled Ryan from the car. Weimer testified that Ryan was pulling against him to prevent him from pulling her out of the car. As soon as Weimer pulled Ryan out of the car, he felt her trying to pull away from him. He testified that he could feel her muscles tensing, and that he believed she was going to pull her arms into her body to prevent the officers from handcuffing her. As a result, Weimer employed a straight-arm bar takedown to throw Ryan to the ground. Weimer held Ryan's left arm and Gielniak her right as Clark handcuffed Ryan from behind.

Ryan testified that she has no recollection of the police pursuit or her actions during that time. The first thing she remembers is being outside of her vehicle and looking at Weimer just prior to being thrown to the ground. Ryan suffered a contusion to her right eye and a cut above that eye as

a result of being brought to the ground by Weimer. Ryan also claims she now panics every time she sees a police officer, and that she suffers from nightmares and low self-esteem.

In September 2005, a jury convicted Ryan of third-degree fleeing and eluding a police officer in violation of MCL 257.602a(3)(a) and assaulting, resisting, or obstructing a police officer in violation of MCL 750.81d.

Ryan filed this suit in December 2005 and filed her amended complaint in February 2006. The complaint alleged that Weimer, Gielniak, and Clark used excessive force in arresting her and that the City was liable for its officers' actions. Ryan also alleged state law claims for assault and battery and gross negligence. The defendants moved for summary judgment, and the district court granted that motion and dismissed Ryan's claims. The court first concluded that Ryan's excessive force claims were barred by *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), because a verdict for Ryan in her civil suit would necessarily imply the invalidity of her criminal conviction for assaulting, resisting, or obstructing an officer. The court also ruled that even if Ryan's claims were not barred by *Heck*, the defendants would be entitled to qualified immunity because the officers' actions were objectively reasonable. Furthermore, the court held that the City could not be liable for the actions of its officers because there was no underlying constitutional violation by the officers. Finally, the court addressed Ryan's state law claims. The court concluded that there was no genuine issue of material fact because the officers behaved reasonably under the circumstances. The court therefore dismissed the state law claims.

II

This Court reviews *de novo* a district court's grant of summary judgment. *Zeigler v. Aukerman*, 512 F.3d 777, 781 (6th Cir. 2008) (citing *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000)). Summary judgment is proper only where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). This Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *Zeigler*, 512 F.3d at 781 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The non-moving party must "set out specific facts showing a genuine issue for trial" to defeat a summary judgment motion. FED. R. CIV. P. 56(e).

### A. Constitutional Claims

Government officials are immune from liability in civil suits unless a clearly established constitutional right has been violated. *Hills v. Kentucky*, 457 F.3d 583, 587 (6th Cir. 2006) (citing *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005)). In determining whether a constitutional right has been violated, a court must consider the allegations in the light most favorable to the plaintiff. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the court concludes a constitutional right has been violated, it must then determine whether the right was clearly established. *Id.* A right is clearly established if it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id.* at 202.

Ryan alleges the defendants violated her clearly established constitutional right to be free from unreasonable seizures when they used excessive force to arrest her. "In determining whether excessive force was used, courts must ask whether the officer's actions, in light of the totality of the circumstances, were objectively reasonable." *Kostrzewa v. City of Troy*, 247 F.3d 633, 639 (6th Cir.

2001). Factors to be considered are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "While courts must look to the totality of the circumstances in determining whether a seizure was reasonable, they must be sure to view those facts 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Kostrzewa*, 247 F.3d at 639 (quoting *Graham*, 490 U.S. at 396). Thus, even if the force used was unreasonable from Ryan's perspective because she was not in full control of her actions at the time, we do not judge the use of force from her perspective.

In this case, Ryan was fleeing, resisting, and obstructing police officers. She led three police cruisers on a chase that lasted almost eight minutes. As Ryan points out, this was not a high-speed chase, and the testimony and police reports from the defendants indicate that Ryan was driving at or below the speed limit during the chase. However, a chase need not be high-speed to be dangerous, and the record indicates that Ryan disobeyed traffic signals and stop signs. The chase concluded only because the officers forced Ryan's vehicle to a halt. Once the chase did end, Ryan refused to follow the officers' directions to display her hands and exit the vehicle. Weimer had to forcibly remove Ryan from the vehicle, and Ryan resisted his efforts. Once he had Ryan out of the vehicle, Weimer used the straight-arm bar takedown to force Ryan to the ground. In doing this, he caused Ryan's head to hit the pavement, which resulted in a cut, a bruise, and swelling. Weimer testified he forced Ryan to the ground because he could feel her arm muscles tensing, and he believed she was going to resist being handcuffed.

The three factors highlighted by the Supreme Court in *Graham* weigh in favor of the reasonableness of the officers' use of force. First, although Ryan's initial crime was merely a traffic violation – swerving abruptly from one lane to another – Ryan ultimately committed the felony offenses of fleeing and eluding and assaulting, resisting, or obstructing an officer. This Court has held that officials are entitled to qualified immunity in the face of excessive force allegations even when the plaintiff "was suspected of relatively minor crimes" if the plaintiff resisted and the officials responded with force. *See Wysong v. City of Heath*, 2008 WL 185798 at *6-7 (6th Cir. Jan. 22, 2008) (slip opinion) (discussing such cases). Second, Ryan posed an immediate threat to herself and the officers. She refused to place her vehicle in park, and it continued to push against Clark's cruiser even after the chase ended. Once she exited the vehicle, she was on a busy street and the officers wished to quickly place her in custody. Third, Ryan actively resisted arrest and attempted to evade arrest. If a reasonable officer would have recognized Ryan's condition and understood that her non-responsiveness was beyond her control, this analysis might be different. However, under the circumstances, the officers could not be expected know that Ryan's non-responsiveness might be due to a seizure. Thus we find that, under the totality of the circumstances, the officers' actions were objectively reasonable.

"A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 900 (6th Cir. 2004) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). Because we find no underlying constitutional violation by the City's officers, the district court also correctly dismissed Ryan's claims against the City.

### B. State Law Claims

Ryan argues that because defendants omitted arguments in favor of dismissing Ryan's state law claims from their motion for summary judgment, the district court should not have considered those arguments. In the district court, defendants filed a motion for summary judgment but did not initially make any arguments based on the state law claims. Following Ryan's brief in response to defendants' motion for summary judgment, defendants filed a reply to the district court that included arguments to dismiss the state law claims. Generally, this Court has found that an issue raised for the first time in a reply to a response brief in the district court is waived. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). However, this Court has deviated from that rule in "'exceptional cases or particular circumstances' or when the rule would produce 'a plain miscarriage of justice.'" *Id.* at 552 (quoting *Foster v. Barilow*, 6 F.3d 405, 407 (6th Cir. 1993)). In deciding whether a case presents such a scenario, we consider: (1) whether the issue is a question of law or whether it requires a factual determination; (2) whether the issue's resolution is clear; (3) whether the failure to consider the issue would result in a miscarriage of justice or a denial of substantial justice; and (4) the parties' rights to have an issue considered by both trial and appellate courts. *Id.* (citing *Friendly Farms v. Reliance Ins. Co.*, 79 F.3d 541, 545 (6th Cir. 1996)). First, whether the defendants are entitled to governmental immunity from Ryan's state law claims is a question of law. *See Herman v. City of Detroit*, 680 N.W.2d 71, 74 (Mich. Ct. App. 2004). Second, the issue's resolution is clear. The immunity analysis under state law is in this case essentially identical to the analysis under § 1983. Third, there is no concern about the parties' right to have an issue heard by a trial and appellate court because the district court considered the issue. *See Lexicon, Inc. v. Safeco*

*Ins. Co. of America*, 436 F.3d 662, 670 n.6 (6th Cir. 2008). Further, "both parties fully briefed the issue before this court." *Id.* Finally, this Court has noted in situations such as this where the trial court addressed the issue and both parties briefed the issue, "judicial economy requires that this court address the merits of the arguments raised by the parties at this stage of the litigation, rather than forcing the parties to raise it with the district court anew on remand." *Id.*

Ryan's complaint includes state law charges of assault and battery and gross negligence. Government employees are not immune from intentional torts such as assault and battery. *Brewer v. Perrin*, 349 N.W.2d 198, 202 (Mich. Ct. App. 1984). However, "[g]overnmental actions which would normally constitute intentional torts are protected by governmental immunity if those actions are justified." *Id.* A police officer may use reasonable force when making an arrest. *Id.* Michigan defines reasonable force as "'that which an ordinarily prudent and intelligent person, with the knowledge and in the situation of the arresting officer, would have deemed necessary.'" *Id.* (quoting *Barrett v. United States*, 64 F.2d 148, 149 (D.C. Cir. 1993)); *see also VanVorous v. Burmeister*, 687 N.W.2d 132, 141 (Mich. Ct. App. 2004). The "ordinarily prudent and intelligent person" language employed by the Michigan courts signals an objective test. The analysis of whether the officers were entitled to qualified immunity from Ryan's § 1983 claim demonstrated that the officers' actions were objectively reasonable. Thus, the officers are not liable for assault and battery. Further, because there was no wrongful conduct, the officers' actions were not grossly negligent. Accordingly, we affirm the district court's dismissal of Ryan's state law claims.

*C. Heck*

Under *Heck v. Humphrey*, if prevailing in a civil suit would necessarily imply the invalidity of a prior criminal conviction, the civil suit is barred. 512 U.S. at 487. While the district court found for the defendants on this basis, we do not need to reach this issue because we find the officers' actions reasonable.

### III

Because we find that the officers' actions were objectively reasonable, we AFFIRM the grant of summary judgement by the district court.