NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0405n.06

No. 24-2088

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

LAURIE LEITCH, et al.,

    Plaintiffs-Appellants,

    v.

NOAH C. WHITE,

    Defendant,

LM GENERAL INSURANCE COMPANY,

    Defendant-Appellee.

**FILED**
Aug 20, 2025
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

OPINION

_____

Before: BATCHELDER, CLAY, and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. Laurie Leitch was riding as a passenger in an all-terrain vehicle (ATV) over sand dunes in Michigan when, after driving over one of the dunes, the ATV landed hard on the ground and rolled on its side before stabilizing. Leitch suffered severe spinal injuries as a result. Following the accident, Leitch submitted a claim to her automobile insurance provider, Liberty Mutual. Liberty Mutual denied Leitch benefits because it determined that the vehicle involved in the accident was not covered by the insurance policy or Michigan's no-fault insurance statute. Leitch sued Liberty Mutual for breach of contract, alleging that the insurance company failed to pay her insurance benefits to which she was entitled. Liberty Mutual moved for summary judgment, and the district court granted the motion. Leitch appeals, disputing both the grant of summary judgment and purported procedural errors the district court made along the way. We affirm.

**BACKGROUND**

**I.     Facts**

Laurie Leitch met Noah White while both were vacationing with their families at the Silver Lake Sand Dunes in Michigan. The dunes are known for their 450-acre off-road vehicle area. And White had brought his 2016 Polaris RZR 1000 Turbo (the RZR) with him from New York to drive there.

The RZR is what is commonly called an ATV, but not all ATVs have the same features. The RZR had seatbelts, headlights, taillights, brake lights, a speedometer, and a bumper. It did not have turn signals, a horn, outside rearview mirrors, differential gears, or windshield wipers. Although the RZR had a nominal windshield, White described it as "half a windshield" made of Plexiglass. White Dep., R. 53-7, PageID 671. On the day of the accident, the RZR had sand-dune tires equipped. White had registered the RZR as an ATV in New York, and it had a New York license plate.

White offered Leitch a ride around the dunes, and she accepted. During the ride, White drove the RZR over a hill. As White and Leitch came over the top of the hill, the RZR took a "nose-div[e]" into the ground and rolled on its side before stabilizing back on all four tires. Leitch Dep., R. 53-8, PageID 719. Leitch immediately told White that she could not feel anything from her waist down. Leitch was taken to the emergency room, and she received spinal surgery the next day. Surgeons fused several discs and inserted steel rods to support her spine. Leitch now walks with a cane and continues to undergo rehabilitative treatment.

Following the accident, Leitch submitted a claim to her automobile insurance provider, LM General Insurance Company (Liberty Mutual). Leitch's insurance policy covered injuries that occur during "auto accident[s]." Ins. Pol'y, R. 53-3, PageID 488 (internal quotation marks

omitted). The policy defines an "auto accident" as a "loss" that involves, as relevant here, the "operation . . . or use of an 'auto' as an 'auto.'" *Id.* at PageID 487 (internal quotation marks omitted). The policy further defines an "auto" as "a motor vehicle or trailer operated or designed for use on public roads." *Id.* (internal quotation marks omitted).

The policy also incorporated coverage under Michigan's No-Fault Act. *See* Mich. Comp. Laws § 500.3101. The Act requires the insurer to "pay benefits for accidental bodily injury arising out of the . . . operation . . . or use of a motor vehicle as a motor vehicle." *Id.* §§ 500.3101, 500.3105(1). Under the Act, a "motor vehicle" is "a vehicle, including a trailer, that is operated or designed for operation on a public highway by power other than muscular power and has more than 2 wheels." *Id.* § 500.3101(3)(i).

Liberty Mutual denied the claim. Liberty Mutual determined that the accident involved "an ATV, which does not meet the definition of 'auto,'" and thus that Leitch was "not injured in an auto accident" under the terms of the policy. Correspondence, R. 53-6, PageID 653 (quotation mark omitted). Liberty Mutual also determined that Leitch was not entitled to benefits under Michigan's No-Fault Act.

## II.    Procedural History

Leitch and her husband, Hans Foldenauer, filed suit against Liberty Mutual for breach of contract and declaratory relief in Michigan state court.[1] Liberty Mutual removed the case to federal court. Following approximately a year of discovery, Liberty Mutual moved for summary judgment.

---

[1] Leitch and Foldenauer (referred to collectively as "Leitch" for ease) originally also named White as a defendant, but they later stipulated to dismissal of their claims against him.

After the parties completed their summary judgment briefing but before the district court ruled on the motion, Leitch moved for leave to file a supplemental brief. Leitch argued that Liberty Mutual had raised two new arguments in its reply brief to which she was entitled to respond: (1) to qualify for coverage, the RZR had to be in use on a public road at the time of the accident, and (2) the court should exclude the opinion of Leitch's expert, Lieutenant Lance R. Cook, because he offered only impermissible legal conclusions. The district court denied Leitch's motion to file a supplemental brief and struck it from the record. The district court first noted that Leitch had failed to comply with local rules in making the motion. The district court also disagreed that Liberty Mutual had raised new arguments in its reply. Instead, the district court reasoned that Liberty Mutual had merely addressed arguments that Leitch had raised in her response brief.

The district court then granted Liberty Mutual's motion for summary judgment. To start, the district court agreed with Liberty Mutual that the court could not consider Lieutenant Cook's opinion insofar as Lieutenant Cook stated the legal conclusions that the RZR was a motor vehicle covered by the No-Fault Act, and that the RZR "was a 'street legal' vehicle in New York." Op. & Order, R. 63, PageID 845–46. Turning to the merits of Leitch's claims, the district court concluded that there was no genuine dispute of material fact that the RZR failed to meet the insurance policy's definition of "auto." The district court determined that the RZR was a "motor vehicle" but was neither "designed for use on" nor "operated" on public roads. Op. & Order, R. 63, PageID 847–49. In concluding that the RZR's design was not intended for use on public roads, the district court relied, in part, on the website of the RZR's manufacturer, Polaris. On its website, Polaris classified the RZR as an "off-road vehicle," and cautioned that purchasers of the RZR should avoid operating the RZR on public roads. *Id.* at PageID 847–48. The district court then turned to whether, design

aside, the RZR was ever operated on public roads. The district court found no evidence that it had been.

The district court also concluded that there was no genuine dispute of material fact as to whether Leitch was entitled to insurance benefits under Michigan's No-Fault Act. The Act specifically excludes off-road vehicles (ORVs) from coverage, and the district court determined that the RZR met the Act's definition of ORV. *See* Mich. Comp. Laws § 500.3101(3)(i)(iv), (k).

Accordingly, the district court granted summary judgment to Liberty Mutual. Leitch timely appealed.

## ANALYSIS

We review the district court's grant of summary judgment de novo. *City of Wyandotte v. Consol. Rail Corp.*, 262 F.3d 581, 585 (6th Cir. 2001). Summary judgment is appropriate when, viewing the record in the light most favorable to the nonmoving party, there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. *Thomas M. Cooley L. Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 526 (6th Cir. 2014). We consider whether there is a genuine dispute of material fact that Leitch was entitled to benefits under both the insurance policy and the No-Fault Act.

## I.      Insurance Policy

As we have explained, the insurance policy covered injuries resulting from accidents involving an "auto," which the policy defines as "a motor vehicle or trailer operated or designed for use on public roads." Ins. Pol'y, R. 53-3, PageID 487–88 (internal quotation marks omitted). The parties do not dispute that the RZR is a "motor vehicle" under the policy. Appellee Br. at 13 n.2. So this appeal turns on whether the RZR was either "designed for use on" or "operated" on public roads. *Id.*

Because we are sitting in diversity, we apply the substantive law of the forum state in interpreting the policy. *See City of Wyandotte*, 262 F.3d at 585. So, in this case, we apply Michigan law. While we focus now on Leitch's contract claim, we recognize that the language in the insurance policy is similar to that in Michigan's No-Fault Act, which defines a motor vehicle as "a vehicle, including a trailer, that is *operated or designed for operation on a public highway* by power other than muscular power and has more than 2 wheels." Mich. Comp. Laws § 500.3101(3)(i) (emphasis added). As the Act defines it, "public highway" has the same meaning as public road. *See id.* § 500.3101(3)(e) (defining "[h]ighway" according to Mich. Comp. Laws § 257.20, which defines a "[h]ighway or street" as "the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel" (internal quotation marks omitted)); *Morris v. Allstate Ins. Co.*, 584 N.W.2d 340, 342 (Mich. Ct. App. 1998) (per curiam) (citing Mich. Comp. Laws § 257.20) (holding that the § 257.20 definition of "highway or street" applies to a "public highway" for the purposes of the No-Fault Act (internal quotation marks omitted)). Given this similarity, we view caselaw interpreting the language of the No-Fault Act as instructive as to how Michigan courts would interpret the nearly identical language in the insurance policy. *Cf. Ebernickel v. State Farm Mut. Auto. Ins. Co.*, 367 N.W.2d 444, 445 (Mich. Ct. App. 1985) (citing precedent "interpret[ing] an insurance contract which incorporated the exact words of the" No-Fault Act in determining whether the vehicle in question was a "motor vehicle" under the Act).

A.    **Designed for Use on Public Roads**

To determine whether a vehicle was designed for use on public roads, Michigan courts focus primarily on the vehicle's features. *See, e.g.*, *Jones v. Emps. Ins. of Wausau*, 403 N.W.2d 130, 132 (Mich. Ct. App. 1987). The RZR's features demonstrate it was not so designed.

The RZR lacked several safety features essential for operation on public roads. *See Johnson v. Mich. Assigned Claims Plan*, --- N.W.3d ---, 2024 WL 4508626, at *4 (Mich. Ct. App. Oct. 16, 2024). For example, the RZR had no turn signals, horn, outside rearview mirrors, differential gears, or windshield wipers. And while the RZR technically had a windshield, White described that windshield as only "half a windshield" made of Plexiglass. White Dep., R. 53-7, PageID 671. Michigan courts have routinely found that vehicles lacking similar safety features were not designed for on-road use. *See Jones*, 403 N.W.2d at 132 (no windshield or turn signals, and only two gears); *Apperson v. Citizens Mut. Ins. Co.*, 344 N.W.2d 812, 814 (Mich. Ct. App. 1983) (no windshield wipers, turn signals, or outside mirrors); *Gividen v. Bristol W. Ins. Co.*, 854 N.W.2d 200, 203 (Mich. Ct. App. 2014) (no turn signals or rearview mirrors). To be sure, unlike the vehicles in those cases, the RZR had features like headlights, taillights, and bumpers. But even if not an exact match, the RZR still "lacked safety features" necessary for driving on public roads, making it "dangerous, if not impossible, to be driven on a roadway." *Johnson*, 2024 WL 4508626, at *4. It is perhaps unsurprising, then, that Polaris's website classifies the RZR as an "off[-]road" vehicle, which further suggests it was not designed for operation on public roads. Op. & Order, R. 63, PageID 847 & n.1 (citing https://www.polaris.com/en-us/brands/).

In addition, on the day of the accident, White had fitted the RZR with sand-dune tires. White testified that these tires are unsuitable for driving on roads, as they would quickly go flat. This modification, although made by the owner rather than the manufacturer, is also evidence that the RZR was not designed for on-road use. *See Gividen*, 854 N.W.2d at 203 (noting that the vehicle was equipped with "tires that were impractical for driving on a paved road because the tires would have been torn up and provided a 'bumpy' ride"); *see also Apperson*, 344 N.W.2d at 814; *Johnson*,

2024 WL 4508626, at *3 (both noting owner modifications that rendered vehicles inoperable for use on public roads).[2]

Leitch does not present any evidence that the RZR was designed for use on public roads. Instead, she argues that, even if the RZR was primarily designed for off-road driving, that primary purpose is not dispositive. She cites *West v. Department of Natural Resources*, 963 N.W.2d 602 (Mich. Ct. App. 2020), for support. But *West* is inapposite. In *West*, the Court of Appeals of Michigan interpreted Michigan's governmental tort liability act and considered whether a snowmobile was a motor vehicle that triggered an exception to the government's immunity from suit. *Id.* at 604–06. In that context, the court noted that "a [vehicle's] primary intended purpose does not determine whether it is a motor vehicle for purposes of the motor-vehicle exception to governmental immunity." *Id.* at 606. By contrast, in the insurance context, the Michigan Supreme Court has indicated that a vehicle's primary purpose is the test for determining coverage. In *Wills v. State Farm Insurance Co.*, 468 N.W.2d 511 (Mich. 1991), the Michigan Supreme Court reasoned that snowmobiles—the same vehicles considered in *West*—"are not motor vehicles for purposes of the no-fault statute" because they "are not primarily designed for operation upon public highways and do not have wheels." *Id.* at 514 & n.4. Consistent with this reasoning, the Michigan Court of Appeals has repeatedly focused on whether the vehicle in question was designed primarily for use on public highways when assessing coverage under the No-Fault Act.

---

[2] Leitch contends that Liberty Mutual "never produced any evidence that these alleged sand tires existed, and every picture produced by [Liberty Mutual] shows that [the RZR] had street-worthy tires installed." Appellant Br. at 16. But White's sworn deposition testimony constitutes evidence that the tires existed. *See* Fed. R. Civ. P. 56(c)(1)(A). Although the photos of the RZR in the record do not show the sand-dune tires, when asked whether the photos provided "an accurate depiction of what the [RZR] looked like on the day of the accident," White responded, "[y]es, other than the tires." White Dep., R. 53-7, PageID 685. White's testimony and the photographs are therefore consistent. Without affirmative evidence to the contrary, Leitch has not created a genuine factual dispute as to whether the RZR was equipped with sand-dune tires on the day of the accident.

*See, e.g.*, *Jones*, 403 N.W.2d at 131–32; *Ebernickel*, 367 N.W.2d at 445; *McFadden v. Allstate Ins. Co.*, 399 N.W.2d 58, 60–61 (Mich. Ct. App. 1986) (per curiam).

Leitch also argues that the district court wrongfully employed a bright line test that took "designed for operation" on public roads to require "that the subject vehicle was designed *solely* for operation on the public roads." Appellant Br. at 36 (quotation marks omitted). There is no indication the district court announced or applied such a rule. The district court's opinion shows that it sought to discern whether the RZR was designed for operation on public roads, exclusively or not.

Lastly, Leitch faults the district court for purportedly relying on evidence outside the record in reaching its conclusion on the RZR's design. In its opinion granting Liberty Mutual's motion for summary judgment, the district court cited both the page of Polaris's website classifying the RZR as an off-road vehicle and a passage from a frequently asked questions (FAQ) page on the same website that advised drivers not to drive the RZR on roadways. Although Liberty Mutual cited the webpage listing the RZR as an off-road vehicle in its summary judgment briefing, Liberty Mutual did not cite the FAQ page. Leitch argues that, in relying on a page of the website that neither party cited, the district court impermissibly relied on evidence outside the record.

But we need not decide whether the district court erred in relying on the FAQ page. Even excluding the information from the FAQ page, there is a significant amount of evidence in the record that the RZR was not designed for use on public roads, and Leitch does not offer evidence to the contrary. Because we can affirm the district court's grant of summary judgment "on any basis supported by the record," *Campbell v. Riahi*, 109 F.4th 854, 860 (6th Cir. 2024), we need not address the validity of the district court's choice to refer to the FAQ page to resolve this case. Based on the other evidence in the record, the district court did not err in concluding that Leitch

failed to create a genuine dispute of material fact as to whether the RZR was designed for use on public roads.

### B.  Operated on Public Roads

Even if not designed for use on public roads, the RZR can qualify for coverage under the policy if it was "operated" on public roads. Ins. Pol'y, R. 53-3, PageID 487. But the parties disagree on the scope of this inquiry. Liberty Mutual argues that the only relevant consideration is whether White was operating the RZR on a public road at the time of the accident. Leitch argues for a broader interpretation. In her view, the RZR satisfies the definition of "auto" if White operated it on a public road at *any* time, regardless of where the accident occurred. There may be at least one other option too, that neither party argues: that the policy covers vehicles that generally or primarily operate on public roadways. Michigan caselaw is not clear as to the correct view. *Compare Morris*, 584 N.W.2d at 342 (evaluating whether the vehicle was "being operated on a 'public highway' at the time of the accident"), *with Johnson*, 2024 WL 4508626, at *4 (explaining that the vehicle was "never operated on a public highway"). We need not resolve the question, however, because Leitch loses even under the interpretation she advances. Based on this record, there is no genuine dispute that White did not drive the RZR on public roads at any time—during the accident, before, or after.[3]

---

[3] Leitch contends that Liberty Mutual first argued that the accident had to occur on a public road in its reply brief in support of summary judgment. Therefore, she reasons, the district court should have granted her motion for leave to file a sur-reply to provide her an opportunity to respond. We have previously explained that if a party moving for summary judgment raises new arguments or introduces new evidence in its reply brief, the district court must give the nonmovant the opportunity to respond. *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 481–82 (6th Cir. 2003). But even assuming that the district court erred in denying Leitch's motion, that does not provide grounds to reverse. We review this now fully-briefed summary judgment issue de novo, and Leitch does not prevail even under the test for which she advocates. So reversing and remanding to allow Leitch to file a sur-reply would be futile. *See Ryan v. Hazel Park*, 279 F. App'x 335, 339 (6th Cir.

White was not driving the RZR on public roads at the time of the accident. The parties agree that White was driving the RZR on the Silver Lake Sand Dunes when the accident occurred. Leitch argues for the first time on appeal, however, that the area of the dunes where the accident occurred is a public highway under Michigan law. Because she did not raise this argument before the district court, she has forfeited it on appeal. *See Fam. Serv. Ass'n ex rel. Coil v. Wells Township*, 783 F.3d 600, 605 (6th Cir. 2015).

There is also no evidence that White drove the RZR on public roads at any other time. When asked in an interrogatory about his use of the RZR, White responded, "I used to ride the [RZR] weekly, around my property in New York, on trails." White Resps. to Interrog., R. 51-4, PageID 423. White further testified that when transporting the RZR over public roads, such as from New York to Michigan or from where he was staying to the sand dunes, he towed it in a trailer.

Leitch attempts to point to evidence in the record showing that the RZR was operated on public roads, but each of her attempts falls flat. She first notes that the RZR had a license plate, was registered, and was insured, so she contends that it must have been operated on public roads. The parties do not dispute that the RZR was registered, but they dispute whether White registered it for use on public roads. Even if White had, though, that would not demonstrate that he *actually operated* the RZR on public roads. *Cf. Coffey v. State Farm Mut. Auto. Ins. Co.*, 412 N.W.2d 281, 284 (Mich. Ct. App. 1987) (per curiam) ("[T]he Michigan Supreme Court has held that the registration status of a vehicle is not relevant to whether or not it is a motor vehicle and thus covered by the [No-Fault Act].").

---

2008) (considering principles of judicial economy in deciding whether to remand for further briefing).

Next, Leitch seizes on an errant phrase in White's deposition testimony about an accident that occurred at another time, in which White mentioned a "Razor":

> **Q:** Can you describe that accident for me, please?
>
> **A:** That was a utility vehicle that – I was working on a hay baler down the street from my house, and coming down my back road, my dirt road, the front tire blew on me, and I rolled it on its side.
>
> **Q:** Did you receive a ticket?
>
> **A:** I did.
>
> **Q:** What was the ticket for?
>
> **A:** Driving a – driving a nonregistered vehicle on a road. Driving a[n] unregistered vehicle on the road. . . . And then he also issued me a driving while intoxicated . . . .
>
> . . . .
>
> **A:** I also did $30,000 of damage to my Razor on that day.
>
> **Q:** Which Razor was that?
>
> **A:** No, on that machine when it rolled over.

White Dep., R. 53-7, PageID 697–98. From this testimony, the district court determined that when White said "machine," he was referring to the "utility vehicle," not the RZR in question. So the district court determined that this testimony could not create a genuine dispute of material fact as to whether the RZR was operated on public roads.

On appeal, Leitch maintains that White's mention of his "Razor" in this testimony creates a genuine dispute of material fact that should have been left to a jury. We are unpersuaded. While we construe the record in the light most favorable to the nonmoving party, *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 414–15 (6th Cir. 2012), we nonetheless conclude that this testimony does not create a genuine dispute as to whether White drove the RZR on a public road. When White first mentioned a "utility vehicle," it appears that he was referring to a different vehicle. And, after White mentioned a Razor, he quickly corrected himself when

asked to clarify. Leitch's counsel did not ask any additional clarifying questions. Nor does Leitch provide any other evidence to establish that White was driving the RZR that day. On its own, White's fleeting, somewhat muddled deposition testimony is not enough to create a genuine dispute of material fact, especially considering the other evidence in the record that White never operated the RZR on public roads. And, as the district court opined, this single line of quickly corrected testimony alone is not enough for a reasonable jury to conclude that White operated the RZR on a public road. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II.     No-Fault Act

Leitch also has not created a genuine dispute as to whether she is entitled to benefits under Michigan's No-Fault Act. The Act requires insurers to pay benefits for accidental injuries "arising out of the . . . operation . . . or use of a motor vehicle as a motor vehicle." Mich. Comp. Laws § 500.3105(1). The Act defines a motor vehicle as "a vehicle, including a trailer, that is operated or designed for operation on a public highway by power other than muscular power and has more than 2 wheels." *Id.* § 500.3101(3)(i). As previously explained, that language is the same as the relevant language from the insurance policy, in that it focuses on whether the vehicle was operated or designed for use on a public highway. So, for the same reasons described above, there is no genuine dispute that the RZR is not a motor vehicle under the No-Fault Act. *See supra* Part I (citing cases interpreting the definition of "motor vehicle" under the No-Fault Act).[4]

---

[4] The No-Fault Act also specifically excludes several types of vehicles, including "ORV[s]" (off-road vehicles), from its definition of "motor vehicle." Mich. Comp. Laws § 500.3101(3)(i)(iv). The parties dispute whether the RZR qualifies as an ORV, but we need not resolve this issue. Even if the RZR is not an ORV under the Act, the RZR still does not meet the primary definition of "motor vehicle"—it was not "operated or designed for operation on a public highway," *id.* § 500.3101(3)(i)—so Leitch's entitlement to benefits under the Act would not change.

Leitch responds that her expert's testimony would have created a genuine dispute as to whether the RZR is a motor vehicle under the Act, but that the district court improperly excluded it. Her expert, Lieutenant Cook, posited in his expert report that the RZR was a "motor vehicle" under the Act. Op. & Order, R. 63, PageID 845–46. The district court excluded this statement because, in its view, the statement constituted an impermissible legal conclusion. We review a district court's decision to exclude expert testimony for abuse of discretion. *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 315 (6th Cir. 2019).

Expert witnesses may not offer legal conclusions by "opin[ing] on the ultimate question of liability." *Babb*, 942 F.3d at 317 (alteration in original) (quoting *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994)). Lieutenant Cook's statement purports both to define a statutory term—"motor vehicle" under the No-Fault Act—and to answer the "ultimate question of liability." *Id.* (citation omitted). Indeed, whether Liberty Mutual is liable to pay Leitch benefits under the No-Fault Act turns on whether the RZR is a "motor vehicle" under the statute. *See* Mich. Comp. Laws § 500.3105(1). Thus, the district court did not abuse its discretion in excluding this portion of Lieutenant Cook's testimony.[5]

**CONCLUSION**

We affirm the district court's grant of summary judgment to Liberty Mutual.

---

[5] Leitch also challenges the district court's decision to exclude another portion of Lieutenant Cook's opinion—his statement that the RZR was "street legal" in New York. Op. & Order, R. 63, PageID 845–46. But whether the vehicle was registered for use on a public highway is relevant only to determining if the RZR is an ORV under the No-Fault Act. *See* Mich. Comp. Laws § 500.3101(3)(k). As previously explained, whether the RZR is an ORV is immaterial, as the RZR fails to meet the Act's primary definition of "motor vehicle" regardless. So any error in excluding this testimony was harmless. *See Griffin v. Finkbeiner*, 689 F.3d 584, 599 (6th Cir. 2012) (reviewing the exclusion of evidence for harmless error); *Hill v. Kia Motors Am., Inc.*, Nos. 20-5690/5693, 2022 WL 557823, at *4 (6th Cir. Feb. 24, 2022) (citing *Pressman v. Franklin Nat'l Bank*, 384 F.3d 182, 187 (6th Cir. 2004)) (applying the harmless error standard to the exclusion of expert testimony).